340

LAWRENCE EPSTEIN et al., Respondents, v MEDITERRANEAN MO-
TORS, INC., Appellant. (And a Second Title.)

Second Department, July 8, 1985

APPEARANCES OF COUNSEL

*Alexander, Ash, Schwartz & Cohen, P. C.* (*Sheldon Bunin* of counsel), for appellant.

*Lipsig, Sullivan & Liapakis, P. C.* (*Pamela Anagnos Liapakis* and *Stephen C. Glasser* of counsel), for respondents.

**OPINION OF THE COURT**

NIEHOFF, J.

This is an exceptionally tragic case. On March 12, 1978, at approximately 12:30 P.M., plaintiff Rhonda Epstein, age seven, and her father, plaintiff Lawrence Epstein, were loading or unloading the trunk of the Epstein car on 21st Drive near 20th Lane, Brooklyn. Suddenly, a new, light-green Fiat owned by defendant sped into the block and struck them. The Fiat then struck the Epstein vehicle which in turn struck plaintiff Eliza-beth Epstein, Lawrence's wife and Rhonda's mother. As a result of the accident, Rhonda became a spastic quadriplegic with brain damage. Lawrence was forced to undergo amputation of

his left leg above the knee. Elizabeth suffered traumatic shock, soft tissue injury and traumatic neurosis.

The driver of the Fiat, 15-year-old Ciro Vuolo, and the passenger, 14-year-old Nick Forte, had stolen the vehicle from defendant. After the accident, Vuolo and Forte left the scene but were apprehended, arrested and charged, *inter alia,* with burglary, reckless endangerment and unlawful operation of a motor vehicle. The pair have not been sued by plaintiffs.

Understandably, plaintiffs would like to be able to look to a financially responsible defendant for monetary recompense. Not surprisingly, therefore, they have brought suit against the defendant owner of the stolen vehicle. The issue presented by the case may be summarized as follows:

May persons who sustain personal injury at the hands of a driver of an automobile which the driver stole from the car dealer owner maintain a cause of action against said owner on a theory of negligence based on a claim that the owner did not take sufficient measures to prevent the theft where the undisputed facts are that (1) the car was stolen from a locked storage garage, and (2) prior to the theft, the keys to the car had been removed by the owner and placed in the showroom premises which was not broken into? In denying defendant's motion for summary judgment dismissing the complaint and holding that the case was one for a jury to decide, Special Term wrote, in part:

"This Court is not unmindful of the fact that generally in a stolen car situation the owner who has not given permission for the use of said vehicle is not held accountable as a result of any accidents or injuries resulting from the use of the stolen car; however, summary judgment, if granted is a harsh remedy which would not afford these plaintiffs their day in court.

"This Court will not stand upon procedural formalities in attempting to resolve serious and unique problems between litigants (*Mastey v. Mancusi,* 122 Misc. 2d 119). The questions to be determined here are: Was the defendant negligent in the maintenance of its storage facility? Was such negligence, if any, a proximate cause of the incident? Was it foreseeable? And was defendant's security of its facility reasonable under the circumstances herein? All of these triable issues will be part of plaintiff [sic] burden of proof in a novel and unique theory of negligence when plaintiffs receive their day in court.

"The case at bar may be analogous to a recent decision by the New York Court of Appeals (*Strunk v. Zoltanski,* Appeal No. 355, NYLJ, July 5, 1984, Page 1, Column 3) wherein the Court held that a landlord may be held responsible to a third party in a

case where they found that the landlord failed to take protective action which might have prevented the particular occurrence. In that case a landlord was found to be liable to a youth who was bitten by a tenant's German Shepherd because, the Court found, the landlord had knowledge of the dog's prior vicious behavior when he rented the premises to the tenant."

While we are truly sympathetic to plaintiffs' plight, on the facts of this case there is no basis under the present state of the law upon which to predicate a cause of action for negligence against the victim owner of the stolen vehicle. Therefore, the complaint must be dismissed.

### THE FACTS

Defendant is a dealer of new and used Fiat automobiles. Its showroom is located at 86-99 18th Avenue, Brooklyn, which property is owned by defendant. In addition, it stored new and used automobiles at a leased indoor garage located at 86-81 18th Avenue, the same block as its showroom.

At approximately 2:30 P.M. on the day of the accident, defendant's president was notified by the police that one of defendant's Fiats had been stolen and involved in an accident. Prior to the accident, the Fiat in question had been kept in the indoor garage.

The only means of access to the storage garage were two wooden garage doors located on the side of the building. One of the garage doors had a smaller door built into it to permit exit and entry, a sort of "door within a door". Both garage doors were locked from the inside, while the small "door within a door" was secured by a key-activated padlock on the outside. Defendant used the same padlock in 1978 as it had used when it first began leasing the premises in 1971. Once an individual entered the small "door within a door", he or she could open the garage doors by merely pulling poles/rods attached to chains and a spring. The storage garage was not protected by an alarm system. At the time of the accident, the retail value of each of the new Fiats stored in the garage area was between $5,000 and $7,000.

Upon arriving at the storage garage, the defendant's president, Ralph LaGamba, noticed that the garage door which contained the small "door within a door" was wide open, as was the small door itself. The doors were not damaged, but the padlock was missing and the "bracket was pulled". After taking an inventory, he determined that two new Fiats, including the one which had been involved in the accident, were missing. He proceeded to the showroom and determined it had not been

broken into. He then checked the closet where the keys to defendant's vehicles were stored, and determined that none of them was missing.

LaGamba later examined the green Fiat at the police station where it had been towed after the accident. According to La-Gamba, "[i]t was a total loss". The front was badly damaged, and the ignition wires were cut. Moreover, "the car had a license plate that was stolen from another car that was a Mercedes". No keys were found in the car. According to LaGamba, both sets of defendant's keys to the car were still in the showroom closet.

### ANALYSIS OF THE LAW

At common law the owner of a stolen vehicle was not liable, as a matter of law, for the negligence of a thief on the basis that the use of the car by the thief intervened between the occurrence of the negligence of the owner and the unskillful driving of the car by the thief (*Podstupka v Brannon*, 54 AD2d 692, *lv denied* 42 NY2d 803; *Lotito v Kyriacus*, 272 App Div 635, *lv dismissed* 297 NY 1027; *Walter v Bond*, 267 App Div 779, *affd* 292 NY 574; *Mann v Parshall*, 229 App Div 366).

An exception to this general rule of nonliability was created by Vehicle and Traffic Law § 1210 (a), commonly referred to as the "key in the ignition statute". At the time of the events herein that statute read as follows: "No person driving or in charge of a motor vehicle shall permit it to stand unattended without first stopping the engine, locking the ignition, removing the key from the vehicle, and effectively setting the brake thereon and, when standing upon any grade, turning the front wheels to the curb or side of the highway".

Section 1210 is found under Vehicle and Traffic Law, title VII, article 33. Vehicle and Traffic Law § 1100 (a) provided at the time of the accident that the provisions of title VII "apply upon highways and upon private roads open to public motor vehicle traffic except where a different place is specifically referred to in a given section".

Because the "key in the ignition" exception to the common-law rule of nonliability on the part of the owner of a stolen vehicle applied only where the vehicle was stolen from a highway or a private road open to public motor vehicle traffic the cases hold that no liability attaches to the owner where the stolen vehicle was left unattended with the key in the ignition on a parking lot or a private driveway (*see, Podstupka v Brannon, supra; Albouyeh v County of Suffolk*, 96 AD2d 543, *affd* 62 NY2d 681; *Zwerdling v Gillis*, 99 AD2d 564, *appeal discontinued*

62 NY2d 804; *General Acc. Group v Noonan,* 66 Misc 2d 528).[*] Accordingly, Vehicle and Traffic Law § 1210 (a) as it read at the time of the events in issue has no application to this case because here the vehicle in question was stolen from a locked garage on private property. Indeed, plaintiffs do not base their claim on the provisions of the Vehicle and Traffic Law. Instead, they seek to have this court announce a new common-law rule to the effect that defendant was under a duty to take reasonable precautions to prevent the risk of theft of its automobiles from the storage garage. Thus, plaintiffs contend that a jury should be permitted to pass upon the question of whether, in light of all the facts, defendant took reasonable precautions to prevent a theft, and that if the jury finds defendant failed in such duty, defendant may be charged with responsibility for the acts of the thief. In essence, plaintiffs argue that, even where the acts of a thief intervene between a defendant's conduct and a plaintiff's injury, liability turns upon whether the intervening act is a normal or foreseeable consequence of the situation created by defendant and that "[i]n the case at bar, plaintiffs demonstrated a pattern of criminal activity against [defendant] within six months of the accident sufficient to have put defendant on notice of the risk of the auto theft".

The pattern of criminal activity of which plaintiffs speak was as follows:

(1) On August 22, 1977, a person or persons entered defendant's premises through a skylight and removed $30 in currency. Damage was caused to the ceiling and office;

(2) On January 11, 1978, a person or persons broke the glass on the front door of the premises and entered the premises; and

(3) On February 4, 1978, a rear window of an automobile on the premises was shattered, the steering column and ignition wires were exposed. Two automobiles, valued at $4,462 each were stolen from the premises.

It should be noted that the foregoing stolen automobiles were taken from a lot, not the locked garage.

The plaintiffs come before this court as innocent and unfortunate victims of the car thieves' misconduct. The suffering heaped upon them cries out for compassion and tempts us to reach out to help them in any way possible. However, tempted as we are to come to their aid, we recognize that we are not afforded

---

[*] By Laws of 1984 (ch 166, § 2), Vehicle and Traffic Law § 1100 (a) was amended to read: "The provisions of this title apply upon public highways, private roads open to public motor vehicle traffic and any other parking lot, except where a different place is specifically referred to in a given section".

the luxury of sympathy or compassion at defendant's expense but must decide this matter upon the law and the facts. With that as our guide, we conclude that the defendant owes no duty to the plaintiffs and that, therefore, it cannot be called upon to respond in damages to them.

If this case presented us with a set of facts from which it could reasonably be argued that by utterly reckless and careless conduct, the owner of the stolen vehicle had created a situation which virtually invited criminal activity so very clearly that no reasonable person could fail to foresee it, we would have to pause to consider whether we ought to carve out an exception to the common-law rule of nonliability in addition to the "key in the ignition" exception created by the Legislature. But, this case certainly is not one calling for any such holding. Here, defendant did nothing which, by any fair interpretation, could be construed by thieves as an invitation to steal defendant's vehicle. On the contrary, defendant took precautions which exceeded those spelled out in the "key in the ignition" statute. Not only was the key removed from the ignition but it was placed separate and apart from the vehicle in the showroom where it remained while the vehicle was left in the locked storage garage.

As a matter of law, an owner of a vehicle or vehicles has no obligation to the public at large to make its premises burglar proof so that the owner's vehicle or vehicles will not be stolen. Nor does the number of times a person has been victimized by thieves or burglars create a duty to the public. The owner of a vehicle which is stolen is victimized by the thief when the thief steals his property. The owner would be doubly victimized if he were to be made the unwilling insurer of, and joint tort-feasor with, the thief who possessed the ingenuity and brazenness to steal his vehicle by crossing the ignition wires so as to be able to drive it away. We can perceive of no sound basis for casting the vehicle owner in that role.

As noted above, Special Term held that the instant case is analogous to the recent decision of the Court of Appeals in *Strunk v Zoltanski* (62 NY2d 572), in which that court stated that a landlord may be held responsible to a third party for an injury on the premises where the landlord failed to take protective action which might have prevented the particular occurrence. There the landlord was found to be liable to a youth who was bitten by a tenant's German Shepherd because the court found that the landlord had knowledge of the dog's prior vicious behavior when he rented the premises to the tenant.

In the *Strunk* case, the Court of Appeals wrote, in pertinent part (62 NY2d 572, 575-576, *supra*):

"The present is a situation in which the landlord, by leasing the premises to the owner of a dog, could be found affirmatively to have created the very risk which was reasonably foreseeable and which operated to injure plaintiff * * *

"Considerations of public policy, the appropriate frame of reference for determination of tort liability in situations newly confronted by the courts, require that a landlord who, prior to leasing the premises, has knowledge that the tenant may be expected to carry on activities on the premises in such a manner as unreasonably to expose third persons to risk of physical injury has a duty to take such precautions as lie within the control of the landlord reasonably to protect such third persons from the injuries to be foreseen if no such precautions are taken".

The holding in the *Strunk* case has no application to this case. That case is limited to the liability of a landlord to a third person for injuries resulting to him where the landlord, prior to leasing the premises, has knowledge that the tenant may be expected to carry on activities on the premises in such a manner as to unreasonably expose such third persons to risk of physical injury. The *Strunk* case cannot reasonably be read as holding that the owner of a vehicle, stolen out of a locked garage, is to become the insurer, to the public at large, for acts of the thief of the vehicle and is to become a joint tort-feasor along with the thief, simply because the owner did not take other more costly and extreme precautions to deter the criminal from carrying out his lawless designs.

Other cases cited by the plaintiffs, such as *Nallan v Helmsley-Spear, Inc.* (50 NY2d 507) and *Kush v City of Buffalo* (59 NY2d 26), are equally inapposite. Those cases concern themselves with a landlord's common-law duty to make the public areas of his property reasonably safe for those who might enter and to protect users of the property from those risks which are reasonably foreseeable to the landlord.

In the case at bar, defendant has breached no duty owing to plaintiffs either under settled principles of common law or under the "key in the ignition" statute.

Consequently, defendant is entitled to summary judgment dismissing the complaint.

MANGANO, J. P., BROWN and LAWRENCE, JJ., concur.

Order of the Supreme Court, Kings County, dated July 9, 1984, reversed, on the law, without costs or disbursements,

defendant's motion for summary judgment granted and complaint dismissed.