No. 48,432

Pedi Bares, Inc., *Appellant,* v. First National Bank of Neodesha, Kansas, *Appellee.*

(575 P.2d 507)

Opinion filed February 25, 1978.

*L. M. Cornish,* of Glenn, Cornish and Leuenberger, of Topeka, argued the cause, and *Henry J. Schulteis,* of the same firm, was with him on the brief for appellant.

*Harry L. Depew,* of Neodesha, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

Holmes, J.: This is an appeal by plaintiff-appellant from an order of the district court sustaining a motion by defendant for summary judgment.

In 1963, plaintiff, a manufacturer of ladies slippers and baby shoes, moved its business from San Francisco, California, to Neodesha, Kansas. Plaintiff entered into an arrangement with defendant for a line of credit whereby plaintiff would execute renewable 60-day notes to defendant. The notes, and loans evidenced thereby, were secured by an assignment of plaintiff's accounts receivable and a copy of the invoice for each sale made by plaintiff was furnished to defendant. Checks received in payment of the accounts were deposited and 80% would be

applied to the existing indebtedness with 20% credited to plaintiff's bank account. Each deposit slip was itemized as to invoice number and amount paid. At the time of each deposit defendant was to remove the invoices covered by the deposit and return them to plaintiff. In this way, defendant's records at any given time should reflect only outstanding unpaid accounts.

On December 15, 1972, plaintiff executed a new 60-day note to defendant renewing its existing loan balance. This had been the customary procedure since 1963. At the time of the renewal of the note no concern was voiced by defendant's officers about the status of plaintiff's loans and no indication was given that defendant considered itself to be in an insecure position. Defendant now contends that its loan committee had lost confidence in plaintiff's business as early as September, 1972.

In October, 1972, plaintiff, experiencing some difficulty collecting its ladies' slipper accounts, authorized the bank to write letters to those ladies' slipper customers with past-due accounts, inquiring as to the status of the accounts. Plaintiff contends defendant was not authorized to contact the baby shoe customers or customers whose accounts were current.

On December 19th and 20th, 1972, defendant wrote a form type letter, not only to the ladies' slipper customers whose accounts were past-due, but also to others, including plaintiff's baby shoe customers. This letter, on the bank's letterhead and addressed to each individual customer, read:

"Gentlemen:

"We have recently made business loans to Pedi Bares, Inc., 417 Main Street, Neodesha, Kansas, secured by accounts receivable. At the present time, the company owes on an account with your company (invoice # _____, dated _____,). We would like for you to reply in the return envelope giving us the status of this account in the amount of $_____.

"Since you evidently owe the above amount, please remit your check made payable to the Pedi Bares, Inc. and the First National Bank of Neodesha, Kansas.

Sincerely yours,
(Signed) G. E. Worley,
dj
G. E. Worley,
President"

This letter was then completed by inserting the invoice number, date of invoice and alleged amount of the account.

Of the baby shoe customers written by the bank on December 19th and 20th, 1972, plaintiff contends at least three had fully paid their accounts prior to December 14, 1972. Another eleven were allegedly paid by a deposit on December 14th. Defendant contends this deposit was not received and posted until December 20th, after the letters had been mailed. Plaintiff further contends letters were sent to eleven customers whose accounts were not due, to at least fifteen customers whose accounts were only a few days overdue and that only four were thirty days or more past-due. Defendant admits writing to 69 different customers of plaintiff.

Defendant, in its answers to interrogatories and in depositions of its officers, admits that a six-day delay in recording a bank deposit is not a normal delay; that it was not normal practice to write to accounts of its loan customers if such accounts were already paid; that it was not normal practice to write when payment of the account was not yet due; that it was not normal practice to write when an account was less than 30 days past-due; and that it was possible defendant had written to customers of plaintiff whose accounts were paid, not yet due or less than 30 days overdue.

Plaintiff alleges in its petition that before the letters were sent, it enjoyed a healthy, viable and profitable business. There is evidence both to support and refute this allegation. Plaintiff alleges the letters caused great and irreparable injury to the relationships between plaintiff and its customers which ultimately resulted in the total destruction of plaintiff's business. Plaintiff alleges the acts of defendant were done either through defendant's gross negligence, recklessness and carelessness or, in the alternative, amounted to the tort of malicious interference on the part of the defendant in that they were intentionally and maliciously carried out with intent to destroy plaintiff's business. Subsequent to December 20th, 1972, plaintiff's volume of business decreased and plaintiff eventually ceased doing business. Plaintiff in its petition prayed for both actual and punitive damages.

Many of the factual issues alleged by plaintiff, including the allegations of negligence and bad faith, are disputed by the defendant, although defendant takes the position that regardless of the facts involved, it had the "right to write" the December

letters. Defendant further takes the position that the letters cannot be construed to be collection letters but were merely an attempt to ascertain the status of the accounts.

The original arrangement between the parties was supplemented by an assignment of accounts receivable in a security agreement executed in 1965. Pertinent portions of the agreement are:

"Until the Bank shall give notice to the Assignor to the contrary, the Assignor will, in the usual course of the Assignor's business and at the Assignor's own cost and expense, but as the agent of the Bank, demand and receive and use its best efforts to collect all moneys due or to become due on such Accounts Receivable. . . . It is agreed that, at any time the Bank so elects, it shall be entitled, in its own name or in the name of the Assignor or otherwise, but at the expense and cost of the Assignor, to collect, demand, receive, sue for or compromise any and all such Accounts Receivable, and to give good and sufficient releases therefor, to endorse any checks, drafts or other orders for the payment of money payable to the Assignor in payment thereof and, in its discretion, to file any claims or take any action or proceeding, either in its own name or in the name of the Assignor or otherwise, which the Bank may deem necessary or advisable. . . ."

Although plaintiff specifies twenty points on appeal, the basic issue concerns whether defendant had the right to write the December, 1972 letters and in so doing whether defendant was negligent or acted in bad faith.

The trial court on January 20, 1976, filed its memorandum sustaining defendant's motion for summary judgment. The court found that the letters written by the defendant were not attempts to collect the accounts but were simply to verify the status of these accounts. The court reasoned that since the defendant had a right to let plaintiff's customers know of the existence of the assignment, there were no factual issues in dispute, and summary judgment was therefore proper. In his memorandum, the court states in part:

"Plaintiff relies upon the provision of the assignment which permits the assignor to continue to collect the accounts, as agent of the assignee. Contrariwise, defendant relies upon the provision, in the same paragraph, that "at any time the Bank so elects" it may collect the accounts. The latter provision is interpreted by me to require that such election be brought to the attention of the assignor, and if this were the substance of the matter I would say that the plaintiff has a justifiable claim, but such is not the fact. The letters which defendant wrote did not constitute taking over the collection of the accounts. . . ."

In explaining his conclusion, the trial judge goes on to state:

". . . there can be no actionable damage from giving actual notice to debtors of the assignor. Again I emphasize that the letters did not constitute a taking over of the accounts; they first sought a report on the status of the accounts, followed by a request that whatever was owing be paid to assignor and assignee jointly. I can see nothing wrong about that.

". . . .

"In summary, plaintiff's claim stands or falls on the question whether defendant did wrong in letting plaintiff's customers know of the existence of the assignment and I have found against the plaintiff on that point.

". . . . Plaintiff charges defendant with improper motives and intent. To make such matters relevant there must be a wrongful act, and my rulings are that the defendant committed no wrongful act."

K.S.A. 60-256(c) provides in part that summary judgment ". . . shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. . . ."

Summary judgment under the provisions of K.S.A. 60-256(c) is to be granted only where the record conclusively shows there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. In considering such a motion plaintiff in this case is entitled to the benefit of all reasonable inferences and doubts that may be drawn from the facts under consideration. *Vaughn v. Murray*, 214 Kan. 456, 521 P.2d 262 (1974).

This court has further stated:

". . . It is only when it can be said that reasonable persons could reach but one conclusion from the same evidence that an issue may be decided as one of law. Summary judgment should never be granted merely because the court may believe movant will prevail if the action is tried on the merits." *Williams v. Community Drive-in Theater, Inc.*, 214 Kan. 359, 364, 520 P.2d 1296 (1974).

The trial judge was premature in finding as a matter of law that the letters written by defendant were not for the purpose of collecting the accounts but only to verify the existence of the accounts. The language "Since you evidently owe the above amount, please remit your check made payable to the Pedi Bares, Inc. and the First National Bank of Neodesha, Kansas," does not clearly substantiate a finding that the letters were merely to verify the accounts. The letters ask for remittance. The purpose of the letters would appear to be an issue for the trier of the facts.

Secondly, the trial court's summation of the issue as being

whether the defendant bank had a right to write the letters does not entirely dispose of plaintiff's complaint. Plaintiff's allegations not only center around whether defendant had a right to send the letters but also whether defendant was negligent or acted in bad faith.

Part of plaintiff's agreement with the defendant was the security agreement, pertinent parts of which are set forth above. The Uniform Commercial Code speaks to the issue of collection rights of a secured party.

K.S.A. 84-9-502 in effect in 1972 provided:

"(1) When so agreed and in any event on default the secured party is entitled to notify an account debtor or the obligor on an instrument to make payment to him whether or not the assignor was theretofore making collections on the collateral, and also to take control of any proceeds to which he is entitled under section 84-9-306."

Subsection (2) provided in part:

"A secured party . . . who undertakes to collect from the account debtors or obligors must proceed in a commercially reasonable manner . . . ."

In addition, K.S.A. 84-1-203 imposes upon every contract or duty an obligation of good faith upon the parties involved. The comment to K.S.A. 84-1-203 explains its purpose as follows:

"This section sets forth a basic principle running throughout this Act. The principle involved is that in commercial transactions good faith is required in the performance and enforcement of all agreements or duties. . . ."

Assuming the December, 1972, letters are found to be an attempt at collection, defendant was obligated to proceed in a commercially reasonable manner and to act in good faith. If the letters are found to be merely an attempt to determine the status of the accounts, defendant was still obligated to proceed without negligence and in good faith. Plaintiff has alleged in its petition that the defendant was either negligent or intentionally malicious and as a result plaintiff's business was destroyed.

"Normally, the presence or the absence of negligence in any degree is not subject to determination by the court on summary judgment, for such a determination should be left to the trier of the facts. It is only when it can be said that reasonable men cannot reach differing conclusions from the same evidence that the issue may be decided as a question of law." *Vaughn v. Murray,* supra, Syl. 2.

As there remain genuine issues of fact to be resolved, the summary judgment cannot stand.

The judgment is reversed and the case is remanded for further proceedings.