(595 P.2d 724)
No. 49,861

JERRY WILLIAMS, *Plaintiff-Appellant,* v. COMMUNITY DRIVE-IN THEATRE, INC., and DONNA KINDER MCKENNA (HATMEN), *Defendants-Appellees,* and INSURANCE COMPANY OF NORTH AMERICA, *Garnishee-Appellee.*

Petition for review denied July 13, 1979.

Opinion filed June 1, 1979.

*John A. Bausch,* of Ascough, Bausch, Eschmann, of Topeka, for the appellant.

*Frederick K. Starrett* and *Robert D. Ochs,* of Fisher, Ralston, Ochs and Heck, P.A., of Topeka, for the appellee Insurance Company of North America.

Before FOTH, C.J., REES and PARKS, JJ.

PARKS, J.: Plaintiff judgment creditor, Jerry Williams, sought to attach by garnishment a debt which he claimed was owed by defendant Insurance Company of North America to its alleged omnibus insured, Donna McKenna, now Hatmen. After finding that no debt existed, the Shawnee County District Court entered summary judgment for the defendant insurance company. Plaintiff appeals.

Plaintiff was shot by Hatmen while on the premises of the Community Drive-In Theatre. He initiated a tort action against her and her employer, the theatre. Summary judgment was rendered for the theatre. On appeal, our Supreme Court reversed the summary judgment and remanded the case for a jury to determine whether Hatmen was acting within the scope of her employment at the time plaintiff was injured. *Williams v. Community Drive-In Theatre, Inc.,* 214 Kan. 359, 368, 520 P.2d 1296 (1974). Upon

remand a jury found that Hatmen was not acting within the scope of her employment, thus the damages awarded to plaintiff were assessed against Hatmen alone.

As Hatmen's creditor, plaintiff takes her place and stands in her shoes, taking only what she herself could enforce. *Harpster v. Reynolds,* 215 Kan. 327, Syl. ¶ 1, 524 P.2d 212 (1974). Plaintiff's primary contention is that the insurance company breached a contractual duty when it failed to defend Hatmen in the tort action against both Hatmen and her employer.

Because the policy issued by the insurance company to Hatmen's employer limited the coverage under the omnibus provision to employees acting within the course of their employment, the insurance company vigorously argues that the jury verdict "laid to rest" any claim that it owed Hatmen a defense. We agree.

Our Supreme Court has recognized the general principle that an insurer's obligation to provide a defense is ordinarily determined by both the pleadings and facts known or reasonably ascertainable by the insured. If those facts give rise to a "potential of liability" under the policy, the insurer owes its insured the duty to defend. This prospective test of the duty to defend the insured applies even though the claim is ultimately found to be groundless. *Spruill Motors, Inc. v. Universal Underwriters Ins. Co.,* 212 Kan. 681, 686, 512 P.2d 403 (1973).

The central question is whether this same principle applies to situations where the contested issue is whether the defendant is in fact an insured. The decisions from other jurisdictions are divided; some apply a prospective test and others adopt an ultimate showing test.

## PROSPECTIVE TEST

Jurisdictions applying the rule that the insurer's duty to defend, unlike its duty to pay, arises when the petition or complaint is filed and is to be determined at that stage of the proceedings rather than after the case has been decided on its merits, include Illinois, Texas, Idaho and Washington. *Allstate Ins. Co. v. Gleason,* 50 Ill. App. 2d 207, 200 N.E.2d 383 (1964); *Heyden Newport Chem. Corp. v. Southern Gen. Ins. Co.,* 387 S.W.2d 22 (Tex. 1965); *Pendlebury v. Western Casualty and Surety Company,* 89 Idaho 456, 406 P.2d 129 (1965); *Holland Amer. Ins. v. National Indemn.,* 75 Wash. 2d 909, 454 P.2d 383 (1969).

Those courts reason that the contract of the company to defend

the insured whenever suit is brought against it to enforce a claim for damages would have little value and be rendered almost meaningless, if that duty did not arise during the early stages of an action brought against the named or omnibus insured. See *Bloom-R.-K. Co. v. Indem'y Co.,* 121 Ohio St. 220, 226, 167 N.E. 884 (1929); *Holland Amer. Ins. v. National Indemn.,* 75 Wash. 2d at 912.

The prospective test fosters judicial economy, with two fringe benefits being the avoidance of both extra legal fees and delay in processing the damage action. Under this theory, money spent by an insurance company in a declaratory judgment action to determine the defendant's status as an insured is better spent in defending the main action. The same proof would undoubtedly be offered and the result would presumably be the same. *Holland Amer. Ins. v. National Indemn.,* 75 Wash. 2d at 914.

### ULTIMATE SHOWING OR RETROSPECTIVE TEST

Arizona, Louisiana and California apply an "ultimate showing test" of the duty to defend an alleged "omnibus insured." See *Navajo Freight Lines, Inc. v. Liberty Mutual Ins. Co.,* 12 Ariz. App. 424, 471 P.2d 309 (1970), *rev. denied* October 20, 1970; *Smith v. Insurance Co. of State of Pennsylvania,* 161 So.2d 903 (La. App.), *rev. denied* 246 La. 344, 164 So.2d 350 (1964); *Butler v. Maryland Casualty Company,* 147 F. Supp. 391 (E.D. La. 1956); *Chicken Delight of Cal., Inc. v. State Farm Mut. Auto. Ins. Co.,* 35 Cal. App. 3d 841, 864, 111 Cal. Rptr. 79 (1973).

These cases hold that before the general principle regarding the duty to defend applies, it must be shown that under the policy the defendant is in fact an insured, named or omnibus. This must be so because the insurer's obligation is not to provide a defense for a stranger merely because the plaintiff alleges that the defendant is an insured or alleges facts which, if true, would make him an insured. While an insurer may not decline the defense of an insured against an ultimately groundless claim, neither may it be compelled to defend an action against a party not entitled thereto under the policy provisions. Stated otherwise, the plaintiff may not create an obligation on the part of the insurer where no obligation previously existed. See *Navajo Freight Lines, Inc. v. Liberty Mutual Ins. Co.,* 12 Ariz. App. at 430-431, where the following rationale for this view was cited by the Arizona Court of Appeals:

"If an insurer erroneously takes the position that notwithstanding the allegations of the complaint it has no·obligation to defend, and facts subsequently establish that such duty did exist, then we are confident that the law will allow the injured party an adequate remedy for the breach by the insurer of its obligations under the policy. (See the many cases affording such a remedy cited in Annot., 50 A.L.R.2d 461 (1956)). On the other hand, if the insurer's position is ultimately shown to be correct, then it should not be penalized by being forced to bear an expense which it did not contractually obligate itself to incur." (p. 431.)

We adopt the ultimate showing test of the duty to defend an omnibus insured and accordingly, in determining whether the defendant had a duty to defend Hatmen, we look first to the language of the policy and then to the jury verdict in the instant case:

"INA [Insurance Company of North America] shall have the right and duty to defend any suit against the Insured seeking damages on account of such personal injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent  .  .  .  .

.  .  .  .
"III.  PERSONS OR ENTITIES INSURED  .  .  .  .
  "The unqualified word Insured includes:
  "(a) The Named Insured;

.  .  .  .
  "(e) any other employee of the Named Insured while in the course of his
      employment  .  .  .  ."

The policy language would fully justify a finding that it was the intent of the parties that the insurer have a duty to its insured to defend all suits against it for injuries which appear, from the investigation of the allegations of the complaint, to be within the ambit of the policy coverage. The policy language does not support a conclusion that it was intended that the pleadings be of controlling influence in determining who is, or is not, an insured within the policy definition. The fact remains that if Hatmen was acting within the course of her employment, the insurer contracted to defend her. If Hatmen was not acting within the course of her employment, she was a stranger and the insurer had not contracted either to defend her or to pay any damages which might be assessed against her. *Cf. Navajo Freight Lines, Inc. v. Liberty Mutual Ins. Co.,* 12 Ariz. App. at 429. When the jury determined that at the time of the shooting Hatmen was *not* working as an employee of the Community Drive-In Theatre and *not* acting within the scope of her employment, she became a stranger to the contract.

We conclude that the defendant insurance company owed no defense to Donna Hatmen, nor was it required to pay damages on her behalf; thus it owes nothing to plaintiff Jerry Williams. Having reached this decision, it is not necessary to consider the other questions which emanate from plaintiff's estoppel contentions.

We are mindful of the rules governing appellate review of summary judgment decisions and have applied them in this case. *Pedi Bares, Inc. v. First National Bank,* 223 Kan. 477, Syl. ¶ 1, 575 P.2d 507 (1978). No issues of material fact remain; therefore the trial court properly sustained the garnishee insurance company's motion for summary judgment.

Judgment is affirmed.

REES, J., concurring: I concur in the affirmance of the summary judgment. However, the majority opinion, as I read it, varies somewhat from my analysis and affords undeserved credence to a so-called "prospective test."

In the underlying negligence case, plaintiff sought a joint and several damages judgment against Hatmen and the theater for personal injury purportedly caused by negligent conduct of Hatmen. Plaintiff alleged in his petition that Hatmen was acting in the course of her employment as an agent of the theater. The only asserted basis of plaintiff's claim against the theater was vicarious liability for Hatmen's conduct. By their answers, Hatmen and the theater each specifically denied her agency. The jury, as reflected by its answer to a special question, determined Hatmen was not acting as an agent. Accordingly, the jury verdict and the judgment entered were for damages against Hatmen only. In the teeth of explicit trial determination of the agency issue, plaintiff now claims entitlement to payment of the damages judgment under a policy issued by the insurer to the theater.

A garnishment proceeding as in the present action, whether one to establish an indebtedness within policy limits or one to establish an indebtedness outside the policy limits, is a contract action. *Gilley v. Farmer,* 207 Kan. 536, 543-544, 485 P.2d 1284 (1971). It is correct that plaintiff, the judgment creditor, stands in the shoes of Hatmen, the judgment debtor. Plaintiff's entitlement to recover in this garnishment proceeding is, at best, to be measured by determination of Hatmen's contractual entitlement to indemnification by the insurer if the claim were made by her.

The insurer was not a named party participating in the trial of the underlying case. Yet had Hatmen not been a named defendant and had plaintiff obtained judgment against the theater, plaintiff doubtless would argue an express or necessarily implicit finding of agency to be binding upon the insurer by reason of collateral estoppel. The same would be true if judgment had been entered against both Hatmen and the theater and prosecution of the garnishment proceeding was on the basis of the insurer's contractual responsibility to satisfy the theater's several judgment liability. In similar vein, it must be held that the express adjudication of no agency collaterally estops the plaintiff in this garnishment proceeding. There is mutuality (each of the present parties is in privity with a party to the prior adjudication), but even if this were not so, this is a classic and proper instance for application of the "*Bernhard* rule" of collateral estoppel. *Bernhard v. Bank of America,* 19 Cal. 2d 807, 122 P.2d 892 (1942); *Crutsinger v. Hess,* 408 F. Supp. 548 (D. Kan. 1976).

Plaintiff's position before us is that because agency was alleged in the underlying action and therefore there was the possibility agency would be found upon trial, the insurer has the contractual duty to pay the judgment against Hatmen. Plaintiff also argues that because the insurer's attorneys appeared on behalf of Hatmen in initial stages of the underlying case, the insurer is obligated to pay the judgment. Wisely, plaintiff does not refute the trial determination of no agency. Instead, he seeks by circumvention to shed himself of its consequence.

Does this insurer have a contractual duty to pay the damages judgment because of plaintiff's allegation of agency in his petition in the underlying action and the then consequent possibility of a finding of agency? No.

Although the majority opinion quotes language of two parts of the policy issued by the insurer, I believe it helpful to somewhat differently quote from the policy. The material portions of the manuscript policy issued by the insurer to the theater, identified as the "Named Insured" in the policy declarations, read in the order they appear as follows:

"INA [i]n consideration of the payment of the premium, in reliance upon the statements in the declarations made a part hereof and subject to all of the terms of this policy, agrees with the Named Insured as follows:

"I. . . .

"INA will pay on behalf of the Insured all sums which the Insured shall

become legally obligated to pay as damages because of personal injury or property damage to which this insurance applies, caused by an occurrence and arising out of (1) the ownership, maintenance or use, including loading and unloading of any automobile, (2) all other operations of the Insured, and INA shall have the right and duty to defend any suit against the Insured seeking damages on account of such personal injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent . . . ."

"III.  PERSONS OR ENTITIES INSURED . . .

"The unqualified word Insured includes:

(a)  the Named Insured;

(b)  any executive officer, partner, director or stockholder of the Named Insured while acting on behalf of such Named Insured;

. . . .

(e)  any other employee of the Named Insured while in the course of his employment by the Named Insured . . . ."

This quoted language includes four specific elements. First, the contracting parties are identified:

"INA . . . agrees with the Named Insured . . . ."

Second, the insuring, or indemnity agreement is stated:

"INA will pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of personal injury . . . to which this insurance applies . . . ."

Third, the agreement to defend is stated:

"INA shall have the . . . duty to defend any suit against the Insured seeking damages on account of such personal injury . . . even if any of the allegations of the suit are groundless, false or fraudulent . . . ."

Fourth, the word "Insured" is defined:

"The . . . word Insured includes:

. . .

(e)  any . . . employee of the Named Insured while in the course of his employment by the Named Insured . . . ."

The language of the insuring agreement clearly and unambiguously provides that the insurer's duty to pay is for judgments against the *insured.* Likewise, the language of the agreement to defend explicitly states the insurer's duty to defend is owed for suits against the *insured.* Where suit allegations are groundless, false or fraudulent, the duty to defend is owed for suits against the *insured. Cf. Brown v. Green,* 204 Kan. 802, 808, 466 P.2d 299 (1970). Plaintiff would have us hold that because he alleged

Hatmen was acting as an agent of the theater, she was an insured to whom the insurer owed a duty to defend. The policy language recites no agreement by the insurer to defend anyone other than an insured. The plain language of the agreement to defend cannot be read to say there is a duty to defend a stranger who, directly or by reason of other allegations, is groundlessly, falsely or fraudulently alleged to be an agent of the named insured.

*Spruill Motors, Inc. v. Universal Underwriters Ins. Co.,* 212 Kan. 681, 512 P.2d 403 (1973), is not to the contrary. In *Spruill,* the named insured was the named defendant in the underlying action. The possibility of coverage there considered was the possibility of liability of the *insured* because of an occurrence that was an insured risk. To argue that *Spruill* is applicable here is to read too much into that decision. In *American Fidelity Ins. Co. v. Employers Mut. Cas. Co.,* 3 Kan. App. 2d 245, 593 P.2d 14 (1979), our court has said:

"In [*Spruill Motors, Inc. v. Universal Underwriters Ins. Co.*] our Supreme Court adopted the rule that an insurer may not rely on the pleadings alone in determining whether it has a duty to defend a suit against its *insured.* Instead it must take into account any facts known to it or reasonably discoverable by it, and if there is a possibility that coverage exists there is a duty to defend. The Court there observed that the duty to defend is independent of the duty to indemnify, and may exist even where, in the long run, there proves to be no *indemnity coverage.*

". . . The issue there was whether the 'occurrence' giving rise to the insured's potential liability was an insured risk; *i.e.,* whether it was a noncovered intentional tort or a covered negligent tort. The insurer, the Court said, had a duty to investigate the underlying facts before refusing to defend.

"As we read *Spruill,* the possibility of coverage referred to is a possibility that under the facts of the case the insured may be found legally obligated to pay damages because of an occurrence that was an insured risk; that is, *a possibility there may be a duty to indemnify* arising out of the facts of the case." 3 Kan. App. 2d at 250-251; emphasis supplied.

*Spruill* is no authority upon which to argue that because the allegations of a petition make it possible that a named defendant's status may be found to be such that he would be within the policy definition of an insured, a duty to defend arises upon the filing of the petition. Kansas case authority prior to *Spruill* that expressed the rule that coverage is to be measured by the allegations of the petition is all addressed to risk coverage. None deal with coverage of a purported insured. See, for example, *Gowing v. Great Plains Mutual Ins. Co.,* 207 Kan. 78, 483 P.2d 1072 (1971); *Brown v. Green,* 204 Kan. 802; *Leonard v. Maryland Casualty Co.,* 158

Kan. 263, 146 P.2d 378 (1944); *El Dorado Refining Co. v. United States Fidelity & G. Co.,* 157 Kan. 198, 139 P.2d 369 (1943).

No coverage of Hatmen arose upon the filing of plaintiff's petition. Its allegations did not make her an agent and therefore an additional insured under the policy. The insurer's duty to defend was owed to no one not an insured. Plaintiff's allegations did not give birth to a duty to defend Hatmen. Absent the duty, there was no breach.

Each of the case authorities cited in the majority opinion in support of a so-called prospective test is distinguishable, unpersuasive, or both. No particular service would be afforded by explanation of this conclusion. The presentation of a so-called prospective test view in the majority opinion discomforts me. It affords that view undeserved credence.

In regard to the underlying case, the insurer owed contractual duties. Upon the commencement of and during the pretrial stages of that action, the insurer chose as a matter of business judgment to proceed as if Hatmen was not acting as an agent of the named insured. Its decision was vindicated at trial. It cannot now be held contractually obligated as if the facts were other than as had been determined. If it had erred in its elected course of conduct, it would be obligated to fulfill its contractual duties by payment of both the judgment and the costs of Hatmen's defense, all as owed to an insured under its policy. In the context of this litigation, the insurer cannot be faulted because it did not undertake Hatmen's defense. To have done so would have placed· it in a position of conflict of interest that could have been otherwise dealt with only by employment of separate counsel for Hatmen and the theater. Even to have done this would have involved assumption by the insurer of a position contrary to Hatmen's own denial of agency:

Plaintiff's second argument, withdrawal of the insurer's attorneys from representation of Hatmen bars the insurer from denial of responsibility to pay the judgment, is also without merit. In the pretrial stages of the underlying action, the insurer's attorneys engaged in two courses of conduct. On behalf of the theater, they entered their appearance, answered, successfully prosecuted a motion for summary judgment on the ground Hatmen did not act as the theater's agent, and unsuccessfully represented the theater on the first appeal. *Williams v. Community Drive-In Theatre, Inc.,* 214 Kan. 359, 520 P.2d 1296 (1974). While plaintiff was

attempting to perfect service upon Hatmen, who was then a minor, the insurer's attorneys requested and obtained orders for extension of time for her answer or other response to plaintiff's petition. No pleadings were filed by the insurer's attorneys on behalf of Hatmen following perfection of service. Although there was no withdrawal of record by the insurer's attorneys as counsel for Hatmen in compliance with Rule 117 (224 Kan. lxii), Hatmen's personal counsel appeared on her behalf as early as October 26, 1971, at pretrial hearings and thereafter by the filing of her answer on November 10, 1971, and at trial on September 9-11, 1974. The record reflects not the slightest showing of prejudice to Hatmen by reason of the factual but not formal withdrawal by the insurer's attorneys from participation on her behalf and the assumption of representation by her personal counsel.

"Waiver," "estoppel" and "bar" are terms often loosely used in opinions concerning denial of responsibility by an insurer. Here, there was no waiver because the actions of the insurer's attorneys cannot be said to have constituted the intentional relinquishment of a known right. *Prather v. Colorado Oil & Gas Corp.,* 218 Kan. 111, 117, 542 P.2d 297 (1975). There is no equitable estoppel because there is no demonstration of detrimental reliance by Hatmen. *Clawson v. Garrison,* 3 Kan. App. 2d 188, 199, 592 P.2d 117 (1979). To argue that withdrawal of representation by an insurer's attorneys is presumptively prejudicial and thus this insurer's denial of contractual responsibility is barred, is an argument without merit. The record refutes any contention Hatmen was prejudiced; the nonexistence of the presumed fact is clearly established. Further, the doctrines of waiver and equitable estoppel could not create a contract for coverage of Hatmen as an insured.

The trial court correctly granted summary judgment.