66 N.Y.2d 6 (1985)
Michael L. Colon, Respondent,
v.
Aetna Life and Casualty Insurance Company, Appellant.
Court of Appeals of the State of New York.
Argued September 9, 1985.
Decided October 15, 1985.
Randall J. Ezick for appellant.
Harold Friedman and Wayne M. Fielder for respondent.
Chief Judge WACHTLER and Judges MEYER, SIMONS and ALEXANDER concur with Judge KAYE; Judge TITONE dissents and votes to reverse in a separate opinion in which Judge JASEN concurs.
*7 KAYE, J.
Where the complaint in a personal injury action against the owner and the driver of a vehicle alleges that the driver was operating the vehicle with the owner's permission, and where the issue of permission has not been judicially resolved prior to trial of the personal injury action, the vehicle's insurer has a duty to defend the driver as well as the owner in that action even though the insurer itself reasonably concludes that the driver did not have the owner's permission and the jury ultimately so finds. In this action by the driver against the insurer to recover attorneys' fees incurred in his defense of the personal injury action, we therefore affirm the Appellate Division order upholding summary judgment for the driver.
On December 4, 1977, plaintiff, Michael Colon, while driving a van owned by Palmier Oil Company and insured by defendant, Aetna Life & Casualty Insurance Company, struck an automobile killing Timothy and Karen Morris. The van had been entrusted by Palmier to its employee, Colon's half-brother (Robert Clark), and Colon was apparently using the van with Clark's knowledge, to deliver a bed to their parents. Following the accident, Aetna conducted an investigation and notified Colon by letter dated January 25, 1978 that it was denying coverage to him for any death or *8 bodily injury claims arising out of the accident because Aetna's investigation had determined that he had been operating the vehicle without Palmier's permission or consent. The letter further stated that Aetna understood that Colon owned a private passenger motor vehicle and urged him to turn over Aetna's letter and any summons he might receive to his own insurance carrier.
In March 1978, the Morris estates sued both Palmier and Colon for wrongful death. Aetna defended Palmier, but not Colon, although the complaint alleged that at the time of the accident Colon was operating the vehicle with Palmier's "knowledge and consent." Colon appeared in the action by an attorney and admitted liability. The sole questions to be determined were the issue of permission, and an assessment of damages. Witnesses for Palmier testified that Clark had explicitly been instructed that the van was to be used only by him, and only for company business. Both the witnesses' credibility and the extent to which Palmier was aware that Clark occasionally had used the vehicle for personal use were considered in that proceeding (Morris v Palmier Oil Co., 94 AD2d 911). The jury found that Colon did not have Palmier's express or implied consent to drive its vehicle on the date of the accident, and awarded the estates $80,000 damages as against Colon only. On appeal by the estates from the portion of the judgment dismissing its claim against Palmier, the Appellate Division unanimously affirmed, concluding that the evidence was sufficient to support the jury's determination that Colon had been operating the vehicle without Palmier's consent (Morris v Palmier Oil Co., supra).
Colon thereafter brought this action for attorneys' fees incurred in connection with the Morris action, predicated on Aetna's claimed wrongful failure to defend him. On Aetna's motion to dismiss for failure to state a cause of action or for summary judgment, and on Colon's cross motion for partial summary judgment on the issue of liability, Special Term granted the cross motion and directed a trial to assess damages. The Appellate Division, one justice dissenting, affirmed and certified to us the question, "Was the order of Special Term, as affirmed by this court, correct as a matter of law?"
We begin with a proposition acknowledged by both parties: an insurer's duty to defend is exceedingly broad, which is in the interest of the insured. The duty arises whenever the allegations of the complaint, for which the insured may stand liable, fall within the risk covered by the policy. The ultimate responsibility of the insured is not a consideration. "If, liberally construed, the claim *9 is within the embrace of the policy, the insurer must come forward to defend its insured no matter how groundless, false or baseless the suit may be." (Ruder & Finn v Seaboard Sur. Co., 52 N.Y.2d 663, 670.) Here there is no question that the allegations of the complaint, as to both the owner and the driver of the van, fall within the risk covered by the policy. The question then becomes whether there should be a departure from the established rule that, irrespective of ultimate liability, the insurer must defend both.
Aetna urges, first, that the cases imposing a duty to defend on the insurer all involve the insurer's duty to its own insured and not, as here, to a third party with whom the insurer has no contractual relationship and, second, that our decision in Zappone v Home Ins. Co. (55 N.Y.2d 131) compels a different result in this case.
In Zappone, we held that an automobile liability insurer's failure to disclaim coverage in writing in accordance with Insurance Law § 167 (8) did not obligate the insurer to indemnify persons with whom it had no contractual relationship with respect to the vehicle involved in the accident. Zappone is distinguishable because it involved the insurer's duty to indemnify, not the broader duty to defend. There, a holding against the insurer would in effect have created a new contract of insurance, for which no premiums had been paid, a result which we concluded would be unreasonable and unfair to the insurer, and would not further the purpose of Insurance Law § 167 (8) to avoid prejudice to the insured, the injured claimant and the Motor Vehicle Accident Indemnity Corporation. That same contention cannot be made here.
Moreover, sound policy considerations support adherence to the established principle obligating the insurer to furnish a defense. So long as the issue of permission remains unresolved, effective defense of the driver is in the interest of the insured, who stands at risk both on the issue of permission and on the underlying issue of negligence. While the named insured may have an incentive to take the litigation position that the driver was operating the vehicle without consent,[*] he also has a strong interest in seeing that the driver obtains a competent defense, so as to avoid prejudice to himself  should permission be found  on the issue *10 of negligence. Additionally, Aetna's decision not to defend Colon was based solely on its own investigation. While there is no allegation of bad faith, a contrary holding here might encourage refusals to defend where the circumstances were less clear, because there would be little risk in doing so. If the person denied a defense were subsequently found to have been operating the vehicle without consent, the insurer would have incurred no cost, and if consent were found the insurer would merely reimburse the attorneys' fees it would have incurred anyway. While the dissent suggests that any abuses by insurers could be redressed in litigation by their insureds (dissenting opn, at p 14), as a policy matter we prefer the course that places the duty of defense initially on the insurer, for the benefit of the insured.
For these reasons, the insurer should have a duty to defend a driver who is alleged to have operated an insured vehicle with the owner's consent. Where the issue is clearcut, the insured or the insurer should be entitled to obtain a prompt judicial determination, whether by summary judgment, declaratory judgment or otherwise that, contrary to the allegations of the personal injury plaintiff's complaint, the driver actually did lack permission of the insured, and that the insurer is not obligated by its contract of insurance to furnish a defense to the driver (see, Spoor-Lasher Co. v Aetna Cas. & Sur. Co., 39 N.Y.2d 875, 876-877).
Accordingly, the order of the Appellate Division should be affirmed, with costs, and the certified question answered in the affirmative.
TITONE, J. (dissenting).
I cannot accept the notion that an insurance carrier is obligated to provide a defense to a stranger simply because the plaintiff alleges facts which, if true, would bring the stranger within the ambit of an omnibus clause providing coverage for persons operating a vehicle with its policyholder's permission. Therefore, I am compelled to dissent.
At the outset, the background facts deserve some emphasis. Plaintiff, Michael L. Colon, was involved in an automobile collision on December 4, 1977, resulting in the death of another driver. At the time, he was operating a vehicle owned by Palmier Oil Co., Inc., the employer of his half-brother, Robert Clark. Despite the fact that Palmier Oil had given Clark explicit instructions not to allow anyone else to operate the vehicle, which was to be used only on company business, Clark allowed Colon to use it for a family errand. Defendant Aetna, the insurance carrier for Palmier Oil, accordingly disclaimed any coverage to Colon under the standard omnibus clause.
*11 Colon admitted liability at the commencement of the trial of the wrongful death action, but claimed that he was operating the vehicle with the implied permission of Palmier Oil, which was also named as a defendant. A jury verdict against Colon, and in favor of Palmier Oil, explicitly rejecting the claim of implied permission by special interrogatory, was upheld on appeal (94 AD2d 911). Colon then commenced this suit against Aetna seeking to recover the attorneys' fees expended in defense of the wrongful death action.
Special Term granted Colon partial summary judgment on the issue of liability, reasoning that Aetna owed a duty to defend. A divided Appellate Division affirmed, but granted leave to appeal. I would reverse.
The majority relies heavily upon the aphorism that the duty to defend is broader than the duty to indemnify. Like many aphorisms, however, it is an overgeneralization which can be misleading, and, blind adherence to it distorts proper analysis. The duty to defend, though broader than the duty to indemnify, is nevertheless likewise owed only to an insured or covered party. Indeed, until today, this court has recognized such a duty only where the party seeking enforcement was a named insured under the policy. (See, e.g., Seaboard Sur. Co. v Gillette Co., 64 N.Y.2d 304, 310; Utica Mut. Ins. Co. v Cherry, 38 N.Y.2d 735; Sturges Mfg. Co. v Utica Mut. Ins. Co., 37 N.Y.2d 69; International Paper Co. v Continental Cas. Co., 35 N.Y.2d 322, 326; Prashker v United States Guar. Co., 1 N.Y.2d 584, 590; Goldberg v Lumber Mut. Cas. Ins. Co., 297 N.Y. 148, 154.) In those cases, the policyholder paid a premium for the carrier's contractual obligation to supply a defense, and our decisions recognized that it ill behooves the carrier to avoid that obligation by becoming an adversary before the underlying facts are fully developed.
Different considerations apply, however, where a stranger is attempting to create coverage that never existed initially. In such a circumstance, the carrier fulfills its duty to its insured  again the person or entity that paid the premium  by asserting a defense that the stranger is without the ambit of the policy, here by the stranger's lack of permission to operate the vehicle after the carrier's investigation establishes that to be a viable defense.
Under the approach followed by the majority, the carrier will have to allow the stranger to select his own counsel and pay the fee for otherwise there will be a conflict of interest (see, Public Serv. Mut. Ins. Co. v Goldfarb, 53 N.Y.2d 392, 401; American Employers Ins. Co. v Goble Aircraft Specialties, 205 Misc 1066, 1075, appeal withdrawn 1 AD2d 1008; *12 Code of Professional Responsibility DR 5-107 [B]; EC 5-17; NY State Bar Assn, Ethics Opinion No. 519 [1980]). That counsel, to be worth his salt, will have to vigorously assert that permission to operate the vehicle was at least implicitly granted in order that the stranger to the policy be afforded coverage  precisely what plaintiff attempted to do here.
Taken to its logical conclusion, the majority would require a carrier to supply counsel to a thief. Depending upon how cleverly the complaint is drafted  and form book complaints routinely assert the magic words concerning the owner's "consent and permission" (see, e.g., 5 Carmody-Wait 2d, NY Prac § 29:522, at 37)  the thief can always assert some sort of implied consent, as, for example, claiming that the motorist left the key in the ignition (Vehicle and Traffic Law § 1210 [a]; cf. Epstein v Mediterranean Motors, 109 AD2d 340). The possibility is hardly farfetched for a thief is not necessarily judgment-proof and it certainly would be in the interest of both the thief and the personal injury plaintiff to make such assertions as the carrier may well be encouraged to settle. This unacceptable prospect was previously unthinkable (see, Katz v Allstate Ins. Co., 96 AD2d 930, lv denied 61 N.Y.2d 608; Robb v Royal Globe Ins. Co., 48 AD2d 935).
From whatever prospective, the carrier, in protecting the interests of the stranger to the contract, will be compelled to take steps that are injurious to the policyholder. In other words, the principle that the duty to defend is broader than the duty to indemnify is literally turned on its head.
The undesirable consequences cannot be avoided through a declaratory judgment action or summary judgment (see, Downey v Merchants Mut. Ins. Co., 30 AD2d 171, affd 23 N.Y.2d 989; Nationwide Mut. Ins. Co. v Dennis, 14 AD2d 188). The plaintiffs in the underlying action are certainly interested in keeping the carrier involved as a potential source of payment of any damages awarded. Unless they are made parties to the declaratory judgment action, the determination could not be binding on them, and if they are made parties, it would amount to a full fledged trial of a major question in the personal injury action, with the resultant duplication of litigation (see, Holland Am. Ins. Co. v National Indem. Co., 75 Wn 2d 909, 454 P2d 383, 386). It thus has been settled "`policy in this State * * * to deny the declaratory judgment where the matter in dispute can be determined in the basic negligence action * * * [and only] to permit the action when the dispute is such that it depends on matters outside of the negligence action or will not arise in the negligence action as part of the *13 lawsuit.'" (Allstate Ins. Co. v Santiago, 98 AD2d 608, quoting Nationwide Mut. Ins. Co. v Dennis, supra, at p 189; see also, Cordial Greens Country Club v Aetna Cas. & Sur. Co., 41 N.Y.2d 996; Du Pont de Nemours & Co. v Russo, 84 AD2d 532; Everlast Sporting Goods Mfg. Co. v Aetna Ins. Co., 23 AD2d 641; Stuyvesant Ins. Co. v Perfetto, 37 Misc 2d 739, affd 20 AD2d 676.)
Nor could a motion for summary judgment be made by the carrier. Permission is presumed from ownership (Leotta v Plessinger, 8 N.Y.2d 449, 461), so, at best, whether or not permission had been granted is an issue of fact, not susceptible of summary resolution (Aetna Cas. & Sur. Co. v Brice, 50 N.Y.2d 958, affg 72 AD2d 927; Basile v Huntington Utils. Fuel Corp., 47 AD2d 625; Blunt v Zinni, 32 AD2d 882, 883). More important, the carrier is not a party to the underlying personal injury action. It could not, pick up the telephone, so to speak, and advise either the attorney for its policyholder or the stranger to make a motion for summary judgment. An attorney cannot allow a nonclient to direct the management of litigation (see, Code of Professional Responsibility DR 5-107 [B]; EC 5-23; State Farm Mut. Auto Ins. Co. v Walker, 382 F.2d 548, 552, cert denied 389 US 1045; American Employers Ins. Co. v Goble Aircraft Specialties, 205 Misc 1066, 1075, supra). Besides, at that point counsel for the stranger has already been engaged so little would be gained from the carrier's perspective even if it could resolve the issue of permission by summary judgment.
Courts elsewhere have focused on the question of whether a carrier is obligated to provide a defense to a stranger to the contract under the omnibus clause where the complaint makes an allegation of implied permission. Most, including those of the neighboring States of Connecticut (Keithan v Massachusetts Bonding & Ins. Co., 159 Conn 128, 267 A2d 660) and New Jersey (Ricciardi v Bernasconi, 105 NJ Super 525, 253 A2d 487 [Mountain, J.]), hold that the stranger must first establish that he or she is within the ambit of coverage so that if no prior declaratory judgment action be brought by the stranger and it is determined in the underlying personal injury suit that the stranger lacked permission to operate the vehicle, the carrier perforce had no duty to defend the stranger and is not liable for counsel fees (see, Southern Underwriters v Dunn, 96 F.2d 224; Butler v Maryland Cas. Co., 147 F Supp 391; Navajo Frgt. Lines v Liberty Mut. Ins. Co., 12 Ariz App 424, 471 P2d 309; Williams v Community Drive-In Theatre, 3 Kan App 2d 352, 595 P2d 724; Smith v Insurance Co. of State of Pa., 161 So 2d 903 [La App], cert denied 246 La 344, 164 So 2d 350; 7A Appleman, Insurance Law and Practice § 4683, at *14 447-448; 7C Appleman, Insurance Law and Practice § 4685.02, at 155-156 [Berdal ed]). These courts hold, in other words, that boiler-plate allegations do not control the rights of nonpolicyholders.
Butler v Maryland Cas. Co. (supra) is illustrative. After recognizing the general principle that the insurer's obligation to provide a defense is ordinarily determined by the allegations of the complaint, even though the allegations are groundless, the court explained: "But before that principle applies, it must be shown that the defendant in the personal injury action is in fact an assured, named or omnibus, under the policy. Obviously, the insurer's obligation is not to provide a defense for a stranger merely because the plaintiff alleges that the strange defendant is an assured or alleges facts which, if true, would make him so. Conversely, the insurer may not renege on its obligation to provide a defense, even for an omnibus insured, merely because the allegations in the complaint are groundless. For example, where a person is driving the named insured's car with his permission, the permittee is an omnibus assured under the policy and the insurer owes him a defense when sued even though the charge of negligence against him cannot be proved. On the other hand, if permission was not granted for the use of the car, the user thereof is not entitled to a defense under the policy irrespective of proof of negligence. In short, allegations in the plaintiff's petition cannot create an obligation on the part of the insurer to defend where none previously existed." (147 F Supp, at p 395.)
This analysis makes eminent sense and should be followed by us. Moreover, I cannot accept the majority's argument that this approach operates as an incentive for a carrier to unreasonably refuse to defend. The stranger will select his or her counsel in any event, and the only question will be whether the carrier must pay the fee (see, Public Serv. Mut. Ins. Co. v Goldfarb, 53 N.Y.2d 392, 401, supra). In addition, the stranger can probably bring a declaratory judgment action to obtain a judicial determination of the carrier's obligations (see, Downey v Merchants Mut. Ins. Co., 30 AD2d 171, affd 23 N.Y.2d 989, supra). Be that as it may, as noted by the Arizona Court of Appeals, "If an insurer erroneously takes the position that notwithstanding the allegations of the complaint it has no obligation to defend, and facts subsequently establish that such duty did exist, then we are confident that the law will allow the injured party an adequate remedy for the breach by the insurer of its obligations under the policy. (See the many cases affording such a remedy cited in Annot., 50 A.L.R.2d 461 (1956)). On the other hand, if the insurer's position is ultimately shown to *15 be correct, then it should not be penalized by being forced to bear an expense which it did not contractually obligate itself to incur" (Navajo Frgt. Lines v Liberty Mut. Ins. Co., 12 Ariz App 424, 431, 471 P2d 309, 316, supra; accord, Williams v Community Drive-In Theatre, supra).
There are some contrary decisions (e.g., Holland Am. Ins. Co. v National Indem. Co., 75 Wn 2d 909, 454 P2d, at p 386, supra). Ironically, however, they offer no support for the majority holding here because they treat the allegations of the complaint in the underlying litigation as controlling, precluding the carrier from resorting to a declaratory judgment action (Holland Am. Ins. Co. v National Indem. Co., 75 Wn 2d 909, 454 P2d, at p 386, supra). In any event, these decisions apparently represent a minority view and their conclusory analysis, ignoring the policy language, is unpersuasive (see, Keithan v Massachusetts Bonding & Ins. Co., 159 Conn 128, 267 A2d 660, supra; Navajo Frgt. Lines v Liberty Mut. Ins. Co., supra; Williams v Community Drive-In Theatre, supra).
In this case, defendant fulfilled its duty to its policyholder when it successfully defended the underlying action on the basis of lack of permission. When the jury determined that plaintiff had operated without such permission, he became a stranger to the contract and defendant owed it no duty to defend or pay for his defense.
Accordingly, I would reverse the order of the Appellate Division and dismiss the complaint.
Order affirmed, etc.
NOTES
[*] For this reason we find incomprehensible the dissent's observation that it would be unethical for the named insured's attorney to consider the carrier's request to seek summary judgment based on lack of consent. To the contrary, an attorney for an insured who did not consider such a motion on his own would not be, in the dissent's phrase, "worth his salt". (Dissenting opn, at p 12.)