No. 90,554
No. 90,952

SOUTH CENTRAL KANSAS HEALTH INSURANCE GROUP, *Plaintiff/ Appellee*, v. HARDEN & COMPANY INSURANCE SERVICES, INC., *Defendant*, and FIREMAN'S FUND INSURANCE COMPANY, *Garnishee/Appellant*.

(97 P.3d 1031)

Opinion filed September 24, 2004.

*Bryan G. Schumann*, of Bollinger, Ruberry & Garvey, of Chicago, Illinois, argued the cause, and *Justice B. King*, of Fisher, Patterson, Sayler & Smith, L.L.P., of Topeka, was with him on the briefs for garnishee/appellant.

*Timothy B. Mustaine*, of Foulston Siefkin LLP, of Wichita, argued the cause, and *Gary L. Ayers* and *Mark A. Biberstein*, of the same firm, were with him on the brief for plaintiff/appellee.

The opinion of the court was delivered by

GERNON, J.: Fireman's Fund Insurance Company (Fireman's) appeals the district court's garnishment order requiring Fireman's to pay a $600,000 judgment to South Central Kansas Health Insurance Group (South Central) on behalf of its insured, Harden & Company Insurance Services, Inc. (Harden). Fireman's also appeals the district court's order awarding attorney fees to South Central.

South Central is a self-funded health care plan for employees of various Kansas public school districts. South Central contracted with Harden to provide third-party administrator services "pertinent to the renewal of the Plan including Reinsurance, Funding

recommendations, Plan changes required by Federal Legislation, or recommended changes for cost containment, etc. on a timely basis." Harden purchased a claims-made policy of professional liability insurance from Fireman's for protection against any negligence claims made against Harden for the services it provided to South Central as a third-party administrator. The policy covered claims made from July 26, 1997, to July 26, 1998.

In May 1998, South Central filed a petition against Harden and other defendants, claiming negligence. Harden submitted the petition to Fireman's as a claim, but Fireman's denied coverage based on its opinion that South Central's petition raised only contract claims which were not covered under the policy. Fireman's prepared a letter to Harden denying coverage on August 7, 1998, but, for some unknown reason, Harden did not receive the letter until February 8, 1999. In the meantime, Harden hired attorneys in California, where it is incorporated, and in Kansas to address the South Central lawsuit.

In December 1998, South Central filed an amended petition clearly stating that it was raising a negligence claim against Harden. In February 1999, Harden submitted the amended petition to Fireman's. Fireman's acknowledged receipt of the amended petition and agreed to reassess its coverage decision in April 1999. Harden contacted Fireman's again in June 1999 for a response to its request for coverage for the claims in the amended petition. In July 1999, Fireman's agreed to defend Harden subject to its reservation of rights under the policy but limited its obligation to defending the allegations in the amended petition.

In July 1999, Harden submitted documentation for its legal bills showing that it had paid $50,942.06 since the amended petition was filed and claiming that Fireman's should reimburse it for the $17,439.15 that had been paid before the amended petition was filed. Fireman's then requested additional documentation to support the legal bills. Harden provided additional documentation as requested, but by December 1999 Fireman's had not paid any of Harden's legal bills. Fireman's eventually approved $12,966.95 in fees for Harden's Kansas attorneys and denied reimbursement for Harden's California attorneys, claiming that California counsel was

unnecessary. Fireman's deducted the approved fees from Harden's $15,000 deductible and refused further payments. Fireman's has never paid any money to Harden for its attorney fees.

In September 2000, Harden received a settlement demand from South Central and advised Fireman's. When Fireman's failed to respond to the settlement demand, Harden accepted a settlement agreement with South Central because it did not have funds to develop a defense. The settlement agreement provided that the matter would be tried to the bench and Harden would not raise a defense. In return, South Central limited the damages to $600,000 and agreed not to garnish, execute, enforce, or attempt to collect the judgment from Harden but to limit any future recovery to proceeds obtained from Fireman's. To assist South Central in proceeding against Fireman's, Harden agreed to assign all of its rights against Fireman's to South Central and to cooperate in any lawsuit required by such assignment.

Following a bench trial on May 30, 2001, the district court found that Harden was negligent in its duties as a third-party administrator for South Central and determined that Harden's negligence had caused a total of $1,894,324 in damages. Based on the settlement agreement, the court limited the judgment for damages to $600,000.

South Central filed a garnishment against Fireman's seeking payment for the $600,000 judgment it received against Harden. In its answer, Fireman's raised three policy exclusions as a defense against the garnishment. South Central responded with a motion for summary judgment. At the hearing on South Central's motion, the district judge assumed that Fireman's policy exclusions applied, stating:

"I'll find that when, for purposes of summary judgment, garnishor or a plaintiff is in the position of having to concede that the exclusions are valid, that means that they're clearly [sic] obviously valid from the get-go, which, frankly, I don't believe are the facts of this case but, for purposes of this hearing, I assume that they're the facts of this case and, therefore, there would be no duty to defend."

Notwithstanding its finding that Harden had no coverage under Fireman's insurance policy, the district court found that Fireman's agreed to defend Harden with a reservation of rights and con-

cluded that Fireman's owed Harden a duty to defend. The district court further found that Fireman's had egregiously breached its duty to defend Harden by failing to pay attorney fees and failing to respond. As a result, the district court ordered Fireman's to pay $600,000 plus interest to South Central. In addition, the district court ordered Fireman's to pay all of South Central's attorney fees from the filing of the initial petition against Harden based on the 40 percent contingency fee contract that South Central entered into with its attorneys.

Fireman's filed separate notices of appeal for the $600,000 garnishment and the award of attorney fees. The cases were consolidated into one appeal, and the matter is before us based on our motion to transfer pursuant to K.S.A. 20-3018(c).

Because this case was decided on summary judgment, we must apply those standards as we review this case. "Summary judgment is appropriate if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Associated Wholesale Grocers, Inc. v. Americold Corp.*, 261 Kan. 806, 820, 934 P.2d 65 (1997); see K.S.A. 2003 Supp. 60-256(c). The trial court must resolve all facts and inferences in favor of the party against whom the ruling is sought. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. An appellate court applies the same rules. If reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied. *Bracken v. Dixon Industries, Inc.*, 272 Kan. 1272, 1274-75, 38 P.3d 679 (2002). An appellate court reviews a decision on summary judgment de novo. *Associated Wholesale Grocers, Inc.*, 261 Kan. at 820.

Fireman's argues that the district court's garnishment order ignores the court's finding that there was no coverage under the policy. Without coverage, Fireman's argues that it cannot be garnished to pay Harden's judgment.

The issue of coverage for Harden's claim is key in the resolution of South Central's garnishment action against Fireman's. The district court's garnishment order is based on its finding that Fireman's breached its duty to defend Harden after Fireman's issued a letter stating that it would defend Harden under a reservation of

rights. However, the letter relied upon by the district court is not a contract. The contract for Harden's coverage is found in the policy issued to Harden by Fireman's. The policy provides in pertinent part:

"B.  DEFENSE AND EXPENSE OF CLAIMS

"1.  With respect to the insurance afforded by this policy, the Company shall defend any Claim against the Insured seeking Damages to which this insurance applies even if any or all of the allegations are groundless, false, or fraudulent . . . ."

Under the policy, Fireman's had a duty to defend Harden for any claim to which the insurance applied. If the claim fell within one of the exclusions in the policy, Fireman's had no contractual duty to defend.

In *Spruill Motors, Inc. v. Universal Underwriters Ins. Co.*, 212 Kan. 681, 684, 512 P.2d 403 (1973), this court stated:

"[T]he insurer is not bound to defend the insured in actions brought wholly outside any coverage obligations assumed in the policy or when the insurer would have no liability if plaintiff secured a judgment against the insured. We adhere to this rule and hold that where there is no coverage there is no duty to defend."

The issue in *Spruill* was whether an insurer had a responsibility to defend its insured when the petition against the insured claimed damages from intentional acts. The *Spruill* court adopted the rule that the insurer has a duty to defend if, based on the pleadings and any facts brought to the insurer's attention or reasonably discoverable during the insurer's investigation, there is a potential for liability. 212 Kan. at 686. Because the insurer was aware of facts indicating that the injury was not caused by an intentional act, the *Spruill* court held that the insurer owed a duty to defend and ordered the insurer to pay the judgment against its insured. 212 Kan. at 688. However, the *Spruill* court specifically limited its holding based on its conclusion that there was coverage under the insurance policy, stating: "The duty to defend this action was dependent on the issue of coverage. Since we have determined there was coverage, the right to a defense was one of the benefits provided in the insurance contract." 212 Kan. at 688.

South Central argues that the duty to defend is broader than the duty to indemnify. In support of this proposition, South Central cites *Steinle v. Knowles*, 265 Kan. 545, 961 P.2d 1228 (1998). Although *Steinle* supports South Central's proposition, further analysis is required to resolve the issue.

In *Steinle*, the issue was whether the real estate title insurer, who had issued a loan policy to the mortgagee in a real estate transaction, had a duty to defend a quiet title action against the seller of the real estate, who was the same person as the mortgagee. The *Steinle* court concluded that the insurer did not owe a duty to defend because the policy was limited to protecting the insured from loss in her role as the mortgagee but did not cover the insured in her role as the seller. 265 Kan. at 555. Therefore, the *Steinle* court held that there was no coverage under the policy, so there was no duty to defend. 265 Kan. at 555.

In *Spivey v. Safeco Ins. Co.*, 254 Kan. 237, 865 P.2d 182 (1993), the insured filed an action against his insurer claiming that the insurer should have provided him a defense in a federal civil tort action. The issue regarding coverage turned on whether the alleged acts were intentional. The *Spivey* court concluded that the insured's actions were intentional and the insured's policy unambiguously excluded intentional conduct. 254 Kan. at 246-51. Accordingly, the *Spivey* court held that the insurer did not owe a duty to defend because of the exclusion in the insured's policy. 254 Kan. at 250-51. The *Spivey* court stated:

"The duty to defend rests primarily on the possibility that coverage exists, and the possibility of coverage must be determined by a good faith analysis of all information the insurer may know or could have reasonably ascertained. If ambiguities in coverage, including exclusionary clauses, are judicially determined against the insurer, the ultimate result controls the insurer's duty to defend. [Citation omitted.]" 254 Kan. at 245-46.

Steinle, *Spivey*, and *Spruill* stand for the proposition that insurers have a duty to defend if there is a potential for liability. They do not stand for the proposition that the duty exists after a finding that there is no coverage under the insurance policy. See *Steinle*, 265 Kan. at 554-55; *Spivey*, 254 Kan. at 246, 250-51; *Spruill*, 212 Kan. at 686, 688.

In *Williams v. Community Drive-In Theatre, Inc.*, 3 Kan. App. 2d 352, 355, 595 P.2d 724, *rev. denied* 226 Kan. 793 (1979), the Court of Appeals adopted the ultimate showing test to determine whether an insurer has a duty to defend. Under the ultimate showing test, an insurer's duty to defend is dependent on a showing that the defendant to the action is insured under the policy. The *Williams* court stated that "the plaintiff may not create an obligation on the part of the insurer where no obligation previously existed." 3 Kan. App. 2d at 354. Quoting the Arizona Court of Appeals, the *Williams* court justified the ultimate showing test, stating:

" 'If an insurer erroneously takes the position that notwithstanding the allegations of the complaint it has no obligation to defend, and facts subsequently establish that such duty did exist, then we are confident that the law will allow the injured party an adequate remedy for the breach by the insurer of its obligations under the policy. (See the many cases affording such a remedy cited in Annot., 50 A.L.R.2d 461 [1956]). On the other hand, if the insurer's position is ultimately shown to be correct, then it should not be penalized by being forced to bear an expense which it did not contractually obligate itself to incur.' " 3 Kan. App. 2d at 355 (quoting *Navajo Freight Lines, Inc. v. Liberty Mutual Ins. Co.*, 12 Ariz. App. 424, 431, 471 P.2d 309, *rev. denied* October 20, 1970).

Although the *Williams* court applied the ultimate showing test to a determination of whether the defendant was a named insured under the policy, the same reasoning applies to the determination of whether the claim is covered by the policy. Although it was not specifically termed as the ultimate showing test, the same reasoning was used by the *Spruill* court when it limited its holding based on its conclusion that the claim was covered and by the *Spivey* and *Steinle* courts when they concluded that the insurer did not have a duty to defend because there was no coverage under the insurance policy. See *Steinle*, 265 Kan. at 555; *Spivey*, 254 Kan. at 250-51; *Spruill*, 212 Kan. at 686.

Likewise, the reasoning of the ultimate showing test applies in this case. When there is no coverage under the insurance policy, there is no duty to defend. If there is no duty to defend, then Fireman's cannot owe damages to Harden based on the breach of that duty. If Fireman's owes no damages to Harden, then there is nothing for South Central to garnish. See K.S.A. 2003 Supp. 60-

732(c) (allowing the garnishment of "all intangible property, funds, credits or other indebtedness belonging to or owing the judgment debtor . . . which is in the possession or under the control of the garnishee"). Thus, the district court erred when it granted South Central's motion for summary judgment and ordered Fireman's to pay the $600,000 judgment against Harden to South Central.

Fireman's argues that the insolvency exclusion in its policy precludes coverage for Harden's claim as a matter of law. Fireman's did not file a cross-motion for summary judgment, so this issue is raised for the first time on appeal. Issues not raised before the trial court cannot be raised for the first time on appeal. *McCain Foods USA, Inc. v. Central Processors, Inc.*, 275 Kan. 1, 15, 61 P.3d 68 (2002). Accordingly, we will not address the merits of this issue.

Finally, Fireman's argues that the district court erroneously ordered it to pay South Central's attorney fees both for the garnishment action and the underlying lawsuit between South Central and Harden. An appellate court reviews an award of attorney fees using an abuse of discretion standard. Judicial discretion is abused when no reasonable person would adopt the position taken by the district court. *Varney Business Services, Inc. v. Pottroff*, 275 Kan. 20, 44, 59 P.3d 1003 (2002).

The district court's award of attorney fees is based on K.S.A. 40-256, which provides:

"That in all actions hereafter commenced, in which judgment is rendered against any insurance company as defined in K.S.A. 40-201, and including in addition thereto any fraternal benefit society and any reciprocal or interinsurance exchange on any policy or certificate of any type or kind of insurance, if it appear from the evidence that such company, society or exchange has refused without just cause or excuse to pay the full amount of such loss, the court in rendering such judgment shall allow the plaintiff a reasonable sum as an attorney's fee for services in such action, including proceeding upon appeal, to be recovered and collected as a part of the costs: *Provided, however,* That when a tender is made by such insurance company, society or exchange before the commencement of the action in which judgment is rendered and the amount recovered is not in excess of such tender no such costs shall be allowed."

Because the district court found that Harden was not covered by Fireman's policy, there is no support for an award of attorney fees. Before attorney fees can be awarded, the court must find that

an insurer refused to pay the full amount of the loss "without just cause." K.S.A. 40-256. However, when a policy of insurance does not cover a claim, an insurer has just cause for refusing to pay for the damages associated with the claim. See *Spruill*, 212 Kan. at 684. The district court's conclusion that Fireman's refused to pay the full amount of Harden's loss without just cause is not supported by the district court's finding that Fireman's policy did not cover Harden's claim. Accordingly, the district court abused its discretion when it ordered Fireman's to pay South Central's attorney fees.

The district court's judgment on South Central's summary judgment motion and the award of attorney fees are reversed.

NUSS and BEIER, JJ., not participating.

CHIEF JUDGE GARY W. RULON and LARSON, S.J., assigned.