**WILLIAM CRAWFORD, INC., Plaintiff,**

v.

**TRAVELERS INSURANCE COMPANY, Defendant.**

**No. 92 Civ. 7812 (MEL).**

United States District Court,
S.D. New York.

Dec. 9, 1993.

Julien & Schlesinger, P.C., New York City (Stuart A. Schlesinger, William D. Fireman, Mary Elizabeth Burns, of counsel), for plaintiff.

Putney, Twombly, Hall & Hirson, New York City (Thomas A. Martin, Craig M. Bonnist, of counsel), for defendant.

LASKER, District Judge.

William Crawford, Inc., is a general contractor specializing in high end residential renovation work. The company is family run and was incorporated in 1895. Travelers Insurance Company, has insured Crawford for over sixty years. Crawford has brought this suit as a result of Travelers' refusal to indemnify Crawford for a claim arising out of Crawford's renovations of an apartment owned by Sid Richardson Bass.

Towards the end of 1989 or the beginning of 1990, Crawford entered into an agreement with Sid Bass to renovate the Bass' New York apartment located on the corner of Fifth Avenue and 66th Street on the Upper East Side of Manhattan. The apartment occupies the entire ninth floor of the building there and sprawls over approximately 7000 square feet. The renovations encompassed the entire apartment and were lavish by any standard: the project was initially estimated by Crawford to take three years and cost $15,000,000 to complete.

In January 1992, a problem arose as to the plastering Crawford had done in the apartment's living room and library because it would not dry properly unless adequately humidified. Crawford's steam humidifier, installed in the apartment's foyer, was too far away from the area requiring humidification and Crawford attempted to solve the problem by placing a number of electric fans in the foyer to blow the steam into the remoter parts of the apartment.

On January 6, 1992, one of the fans ignited causing a fire. The fire damage occurred primarily in the entrance area. However, there was also smoke damage requiring restorative work both in other rooms of the Bass apartment and in other parts of the building. Travelers was notified of the accident the day it happened and Crawford immediately set about repairing the damage to the Bass' apartment.

The repair work in the apartment was extensive. Crawford ultimately invoiced Bass for $447,922.88. Not surprisingly, Bass refused to pay. Two days later, on April 23, 1992, Crawford filed a formal claim with Travelers which had already been actively investigating the cause of the fire and its attendant damage since the time of the accident in January. On August 18, 1992, after a review of the claim by Richard Woollams of Travelers' strategic claims division, the insurance company declined coverage.

Crawford and Travelers have filed cross-motions for summary judgment.

I.

Travelers' relies on Section I(2)(j) of the commercial liability part of Crawford's insurance contract which excludes from coverage:

"Property damage" to

. . . .

(5) That particular part of real property damage on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; . . . .

Travelers maintains that the plain language of Section I(2)(j)(5) (Section "(j)(5)") precludes Crawford's recovering on its claim for damage to the Bass apartment.

Crawford responds that the exclusion does not prevent recovery because it would be "meaningless" to read the phrase "[t]hat particular part of real property on which you . . . are performing operations" in Section (j)(5) as applying to the entire Bass apartment. Instead, Crawford contends that Section (j)(5) only excludes coverage for the damage to that specific part of the apartment on which Crawford was actually doing work when the accident occurred.

The case is governed by New York law and there are apparently no New York cases

interpreting the language of Section (j)(5) or comparable provisions. However, courts in other states have uniformly rejected Crawford's position. *See, e.g., Jet Line Servs. Inc. v. American Employers Ins. Co.,* 404 Mass. 706, 537 N.E.2d 107 (1989) ("that particular part of any property ... upon which operations are being performed" referred to entire tank which the insured had been retained to clean, not merely to the bottom of the tank which it was cleaning at the moment of explosion); *Goldsberry Operating Co. v. Cassity, Inc.,* 367 So.2d 133 (La.Ct.App.1979) ("that particular part of any property ... upon which operations are being performed by.... the insured at the time of the property damage" covered explosion damage to an oil and gas well at depth of 6900 feet even though the area of the well that the insured had been retained to perforate was at 8000 feet); *Vinsant Elec. Contractors v. Aetna Casualty & Sur. Co.,* 530 S.W.2d 76 (Tenn. 1975) ("that particular part of any property ... upon which operations are being performed" was not limited to "precise and isolated spot" upon which work was being done); *Vandivort Constr. Co. v. Seattle Tennis Club,* 11 Wash.App. 303, 522 P.2d 198 (1974) ("that particular part of any property ... upon which operations are being performed by ... insured" was not limited to that part of real property where work was being performed).

Crawford has not proffered any contrary authority and its attempt to distinguish this case on its facts is not persuasive. We disagree with Crawford's assertion that it is easier to isolate the part of the property on which it was performing operations in this case than in the cases cited above. Indeed, Crawford's own submissions are contradictory on what the proper area should be. While Crawford's initial brief suggests confining the area excluded from coverage by Section (j)(5) to the immediate surroundings of the ignited fan in the foyer (Pl.'s Mem.Supp. Summ.J. at 18), its reply brief contends that the relevant area is the portion of the living room and library that was being humidified (Pl.'s Reply Mem.Supp.Summ.J. at 7).

Crawford argues that Travelers' delay in declining coverage and the actions of Richard Woollams of Travelers' strategic claims department demonstrate an ambiguity in the exclusionary scope of Section (j)(5). It is true that over seven months elapsed between the fire and Travelers' decision declining coverage. However, Travelers spent most of that time determining the cause of the fire and the extent of the damage—not whether Section (j)(5) applied. When Crawford's claim was finally referred to Woollams for a determination of coverage, he decided on his first review of the materials that Section (j)(5) was "potentially applicable." Woollams' subsequent actions do not betray any perplexity on his part about the scope of Section (j)(5) and are more accurately characterized as a diligent effort to double check his first impression.

There is an implication in Crawford's presentation that Section (j)(5) cannot mean what it says because such an interpretation would leave a construction company unprotected against the risks of its own malfeasance in the area of its own operations. The analysis is incorrect because, as Travelers points out, insurance is indeed available to cover this risk under a builders risk policy which Crawford did not purchase.

In sum, Section (j)(5) is not ambiguous and precludes Crawford's recovery under its insurance policy from Travelers for the costs incurred repairing the damage to the Bass apartment.

We note in passing that Travelers has represented to the Court that it acknowledges that the policy covers claims arising out of the fire from damage to other areas of the building which may by themselves exceed the $500,000 ceiling of Crawford's insurance policy. If that turns out to be so, Crawford would not be able to recover for the damages to the Bass apartment even if exclusion (j)(5) did not preclude its claim.

## II.

Crawford argues in the alternative that Travelers is liable because Travelers waited an unreasonably long time to disclaim coverage and Crawford was prejudiced by the delay. Travelers counters that the delay was not unreasonable and, in any event, did not prejudice Crawford.

Under New York law, "mere delay in disclaiming coverage does not suffice to estop an insurer from disavowing liability." *Greater New York Savs. Bank v. Travelers Ins.*, 173 A.D.2d 521, 522, 570 N.Y.S.2d 122, 123 (2d Dept.1991). However, "the doctrine of estoppel has been applied where the insured has been prejudiced as a result of unreasonable delay in failing to disclaim." *Id.* (citations omitted). To show prejudice, the insured must show reliance and a change in position resulting from the delay. *Airco Alloys Div. v. Niagara Mohawk Power*, 76 A.D.2d 68, 82, 430 N.Y.S.2d 179, 187 (4th Dept.1980). Where the insured is not prejudiced, the insurer is not estopped from disclaiming liability as a matter of law. 69 N.Y.Jur.2d *Insurance* § 1285 (1988).

Crawford's estoppel argument fails because it suffered no prejudice as a result of the delay. Crawford concedes that it was contractually obligated to perform the repairs whether Travelers ultimately paid its claim or not. It is true that Richard Hanington, Crawford's president, testified that, if he had earlier known that Travelers would disavow coverage, he could have avoided serious cash-flow problems because he would have "figured out some way of getting future financing by June" instead of "hock[ing] things to make this thing work." However, Crawford has not in any way quantified this alleged injury and it is far too speculative a theory to support an allegation of prejudice. Accordingly, Travelers is not estopped from disclaiming coverage.

## CONCLUSION

Crawford's motion for summary judgment is denied. Travelers' motion for summary judgment is granted and the complaint is dismissed.

It is so ordered.