**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**December 13, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

ADVANTAGE HOMEBUILDING,
LLC.,

     Plaintiff-Appellant,

ASSURANCE COMPANY OF
AMERICA,

     Defendant,

 v.

MARYLAND CASUALTY COMPANY,

     Defendant-Appellee.

No. 05-3200

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**
**(D.C. No. 03-CV-2426-KHV)**

---

Eric G. Kraft, Duggan, Shadwick, Doerr & Kurlbaum, Overland Park, Kansas,
for Plaintiff-Appellant.

Craig N. Johnson, Kutak Rock LLP, Denver, Colorado (Bradley J. Baumgart and Michael
E. Brown, Kutak Rock LLP, Kansas City, Missouri, with him on the brief),
for Defendant-Appellee.

---

Before **KELLY**, **McKAY**, and **BRISCOE**, Circuit Judges.

---

**BRISCOE**, Circuit Judge.

Plaintiff Advantage Homebuilding, Inc. (Advantage) filed this action against defendant Maryland Casualty Company (Maryland) seeking a declaratory judgment that Maryland had a duty, under a commercial general liability insurance policy, to defend Advantage in a lawsuit brought against Advantage in Kansas state court. The district court entered judgment in favor of Maryland. Advantage now appeals. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

I.

Advantage is a limited liability company organized and existing under the laws of the State of Kansas, and engaged in the business of homebuilding. From August 28, 2002, until August 28, 2003, Advantage was covered under a commercial general liability insurance policy issued by Maryland (the Policy). The Policy provided, in pertinent part, as follows:

SECTION I - COVERAGES

COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. Insuring Agreement.
a. We [Maryland] will pay those sums that the insured becomes legally obligated to pay as damages because of . . . "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. * * * We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.
* * *
b. This insurance applies to . . . "property damage" only if:
      (a) The . . . "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and
      (b) The . . . "property damage" occurs during the policy period.

\* \* \*

2.  Exclusions

This insurance does not apply to:

\* \* \*

j.  Damage to Property

"Property damage" to:

\* \* \*

(5) That particular part of real property on which you or any contractors or subcontractors working on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

\* \* \*

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

\* \* \*

SECTION V - DEFINITIONS

\* \* \*

13.  "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

\* \* \*

16.  "Products-completed operations hazard":

a.  Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

(a) When all of the work called for in your contract has been completed.

(b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

(c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

17. "Property damage" means:

a. Physical injury to tangible property including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

* * *

21. "Your product" means:

a. Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(1) You . . .

22. "Your work" means:

a. Work or operations performed by you or on your behalf, but does not include work or operations performed by another entity which joined with you to form a partnership or joint venture not shown as a Named Insured in the Declarations, which terminated or ended prior to the effective date of this policy; and

b. Materials, parts or equipment furnished in connection with such work or operations.

App. at 73, 75, 85, 87, 88.

On November 14, 2002, three couples for whom Advantage had built homes sued Advantage in the District Court of Johnson County, Kansas, seeking compensatory damages for windows on each of their homes that were allegedly damaged by Advantage. The homeowners alleged claims for negligence, breach of contract/warranty, and

violations of the Kansas Consumer Protection Act. After learning of the homeowners' suit, Advantage submitted a claim of loss to Maryland under the Policy. Maryland refused to provide Advantage with a defense, and likewise denied coverage, based upon exclusions contained within the Policy.

The homeowners' suit proceeded to trial and the state district court determined that the damage to the windows was caused by McGarrah Masonry (McGarrah), a subcontractor hired by Advantage. The state district court entered judgment in the homeowners' favor and against Advantage in the amount of $32,411.00 on the claims of negligence and breach of contract/warranty. With respect to the homeowners' claims under the Kansas Consumer Protection Act, the state district court entered judgment in favor of Advantage. The state district court also entered judgment in favor of Advantage on its cross-claim for indemnification against McGarrah. McGarrah subsequently paid this judgment in full.

Advantage filed this action against Maryland for declaratory judgment on August 7, 2003, in the District Court of Johnson County, Kansas. Maryland removed the action to federal district court based upon diversity of citizenship and the amount in controversy. Advantage subsequently amended its complaint and moved for judgment on the pleadings. Maryland filed its own motion for judgment on the pleadings or, in the alternative, for summary judgment. The district court conducted a telephonic hearing during which the parties agreed that the stipulated facts contained in the pretrial order constituted the entire body of evidence that would be presented if the case were to

proceed to trial. On April 13, 2005, the district court issued a memorandum and order granting Maryland's motion for judgment on the pleadings and denying Advantage's similar motion as moot. Judgment was entered in favor of Maryland on that same date. Advantage subsequently filed a timely notice of appeal.

II.

We review de novo the district court's grant of a motion for judgment on the pleadings. Park Univ. Enterp., Inc. v. American Cas. Co., 442 F.3d 1239, 1244 (10th Cir. 2006). "Judgment on the pleadings should not be granted unless the moving party has clearly established that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law." Id. (internal quotation marks omitted).

Because this is a diversity action, we "apply the substantive law of the forum state, including its choice of law rules." Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. Pepsico, Inc., 431 F.3d 1241, 1255 (10th Cir. 2005). Kansas is the forum state in this appeal. Under Kansas choice-of-law rules, an insurance contract is governed by the law of the state where the contract was entered into. U.S. Fidelity and Guar. Co. v. Federated Rural Elec. Ins. Co., 286 F.3d 1216, 1218 (10th Cir. 2002) (citing Safeco Ins. Co. of Am. v. Allen, 941 P.2d 1365, 1372 (Kan. 1997)). Although the record on appeal does not indicate where the insurance contract at issue was entered into, the parties agree that Kansas law controls (and thus, presumably, the contract was entered into in Kansas). As McGarrah has paid the underlying state court judgment, the only issue remaining is whether Maryland had a duty to defend Advantage.

-6-

Under Kansas law, "insurers have a duty to defend if there is a potential for liability" under the policy at issue. South Central Kansas Health Ins. Group v. Harden & Co. Ins. Servs., Inc., 97 P.3d 1031, 1035 (Kan. 2004). More specifically, an "insurer has a duty to defend if, based on the pleadings and any facts brought to the insurer's attention or reasonably discoverable during the insurance investigation, there is a potential for liability." Id. at 1034 (citing Spruill Motors Inc. v. Univ. Underwriters Ins. Co., 512 P.2d 403 (Kan. 1973)). "When there is no coverage under the insurance policy" at issue, "there is no duty to defend." Id. at 1035. In applying these principles, the result is that "[t]he duty to defend and whether the policy provides coverage are not necessarily coextensive." Spivey v. Safeco Ins. Co., 865 P.2d 182, 188 (Kan. 1993). That is, because the duty to defend hinges on the "potential for liability," rather than actual liability, an insurer may have a duty to defend even if it is ultimately determined that the policy does not provide coverage.

Where, as here, an insured files suit against its insurer seeking coverage under a policy of insurance, the insured has the "burden of proving he or she falls within the coverage provisions" of the policy. Brumley v. Lee, 963 P.2d 1224, 1232 (Kan. 1998). More specifically, "the insured has the burden of proof to establish the nature and extent of any loss and that the loss claimed was caused by one of the perils insured against ('covered') by the policy." Kansas Farm Bureau Ins. Co. v. Reynolds, 823 P.2d 216, 218 (Kan. App. 1991) (internal quotation marks omitted). Assuming the insured can satisfy this burden, the insurer then has the burden of proving that any exclusionary clauses

-7-

within the policy apply to preclude coverage. <u>Exploration Place, Inc. v. Midwest Drywall Co.</u>, 89 P.3d 536, 541 (Kan. 2004).

> *Did the district court err in concluding that Advantage failed to meet its initial burden of showing that coverage existed under the policy at issue?*

In its first issue on appeal, Advantage contends the district court erred in concluding that Advantage failed to meet its burden of showing a possibility of coverage under the Policy. According to Advantage, it "fully briefed the reasons why the damages claimed in the Underlying Action fell within the general provisions of the insurance policy and Maryland waived this argument by not responding . . . ." Aplt. Br. at 26. In particular, Advantage contends that (a) "the parties stipulated that the submission of th[e] claim was timely," (b) "the property damage alleged to have occurred was caused by an occurrence which took place in the coverage territory during the applicable policy period," and (c) "Maryland never refuted the veracity of any of these elements . . . ." <u>Id.</u> at 27. Thus, Advantage asserts, it necessarily satisfied its burden of establishing the possibility of coverage.

We reject Advantage's arguments for two reasons. First, it is far from clear that the district court intended to conclude that Advantage failed to satisfy its initial burden of establishing that the claims asserted against it in the underlying action fell within the coverage provisions of the policy. Rather, it appears that the district court's order focused on the ultimate question of whether, taking into account the Policy's exclusionary provisions, Advantage was entitled to coverage under the Policy. Second, even assuming

the district court did err in concluding that Advantage failed to satisfy its initial burden, that error is harmless because we apply a de novo standard of review in determining whether Maryland was entitled to judgment in its favor.

> *Did the district court err in concluding that the claims asserted in the underlying action fell within the scope of policy exclusions?*

Advantage next contends the district court erred in concluding that the claims asserted in the underlying action fell within the scope of policy exclusions. More specifically, Advantage contends the district court "failed to recognize that . . . Maryland possessed the burden of proving that an exception to coverage applied," and instead placed the burden on Advantage to prove that an exception to coverage did not apply. Aplt. Br. at 28. Advantage further contends that, in any event, "it is clear that" the two exclusions cited by the district court "do not apply to exclude coverage" and "cannot justify Maryland's refusal to defend Advantage . . . ." Id. at 30.

Advantage's first argument is easily disposed of. A review of the record on appeal clearly establishes that the district court did not shift the burden to Advantage to prove the inapplicability of the two policy exclusions cited by the district court. Moreover, the argument is immaterial because, as we have noted, we apply a de novo standard of review in determining whether Maryland was entitled to judgment in its favor.

That leaves Advantage's second argument, i.e., that the two policy exclusions cited by the district court were inapplicable. In assessing the applicability of the policy exclusions asserted by Maryland and relied upon by the district court, we begin by

reviewing the factual allegations asserted in the underlying lawsuit. According to the complaint in the underlying lawsuit, each of the three plaintiff couples contracted with Advantage "for the construction and purchase of . . . new home[s] . . . ." Id. at 222. The complaint further alleged that, after the homes were completed by Advantage and the couples moved in, the couples each discovered extensive damage to the windows of their homes. Id. at 223-24. Count I of the complaint, which asserted claims for negligence, alleged that Advantage owed the plaintiffs a duty "to install all window units in the home[s] in a professional, workmanlike manner and without any material defects or damage to any of the windows," but breached those duties "by providing homes to plaintiffs with significant damage to the window units." Id. at 225. Count II of the complaint, which asserted claims for breach of contract/warranty, alleged that Advantage "breached its contracts with plaintiffs by failing to construct their homes in a professional and workmanlike manner and without any material defects." Id. at 226. Count III of the complaint, which asserted claims under the Kansas Consumer Protection Act, alleged that Advantage "fail[ed] to disclose . . . material defects in plaintiffs' homes . . . ." Id. at 227.

Maryland contends, and the district court agreed, that two exclusionary provisions of the policy applied to preclude coverage and, in turn, any duty to defend. These two provisions, hereinafter referred to as j(5) and j(6), provide as follows:

> 2. Exclusions.
>    This insurance does not apply to:
>    * * *
>    j. Damage to Property
>      "Property damage" to:

* * *

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

* * *

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

App. at 75.

*Exclusion j(5)*

The district court interpreted exclusion j(5) as applying to any property damage that occurred while the work on the house was ongoing. Armed with that interpretation, the district court concluded that the key question was "whether McGarrah Masonry was performing its work when the damage occurred." Id. at 83. After reviewing the record, the district court concluded that "the property damage occurred concurrently with the negligent acts of the Advantage subcontractor – the windows were scratched when the subcontractor dropped mortar on them," and there was "no[] dispute that the work was in progress when the subcontractor damaged the windows." Id. Thus, the district court concluded that exclusion j(5) applied and Maryland "had no duty to indemnify Advantage for the damages assessed against it in the underlying suit." Id.

Advantage disputes the district court's conclusions. As it did below, Advantage argues that exclusion j(5) must be interpreted to apply only at the time an actual "claim"

-11-

arises, and not merely at the time damage occurs, during the performance of the insured's work. Accordingly, Advantage argues, exclusion j(5) is inapplicable here because "there is no reasonable dispute that no one was 'performing operations' at the time that the claims of the underlying lawsuit arose." Aplt. Br. at 32.

We reject Advantage's interpretation of exclusion j(5). The language of exclusion j(5) unambiguously focuses on when the "property damage" at issue occurs, not, as suggested by Advantage, when a legal claim accrues against the insured. More specifically, the language of exclusion j(5) refers to "property damage" (defined under the Policy as physical injury to, or loss of use of, tangible property) occurring to real property during the course of the insured's work. See Emy Poulad Grotell, Understanding The Basics of Commercial General Liability Policies, 652 PLI/Lit 63, (Practising Law Institute, Litigation and Administrative Practice Course Handbook Series, 2001) (noting that "[s]ome commentators indicate that the exclusion only applies to the extent that the damage occurred while the insured was performing and to the extent that the damage occurred after the operations have ceased the exclusion would not apply"). No mention whatsoever is made in the policy in question of a "claim" accruing against the insured during the performance of the work.

We likewise reject the principal case relied upon by Advantage in support of its interpretation, American States Insurance Company v. Powers, 262 F. Supp. 2d 1245 (D. Kan. 2003). In American States, a commercial general liability insurer, American States, filed suit seeking a declaratory judgment that it had no obligation to defend its insured,

Garold Powers, against a lawsuit filed against him alleging that he "breached [a] contract . . . and was negligent in failing to construct [a] building in a workmanlike and safe manner, in failing to construct the building according to the agreed specifications; in failing to construct the building in the timeframe agreed to; in failing to meet building codes for structural design; and failing to stay within the contract price." Id. at 1247. Exclusion j(5) of the policy issued by American States to Powers was worded identically to exclusion j(5) of the policy at issue in this case. Reviewing that exclusion, the court in American States stated that "[t]he vast majority of commentators that have addressed exclusion j(5) have recognized that the exclusion is intended to 'bar coverage for the work being done by a contractor when claims arise at the time the work is being performed.'" Id. at 1250 (quoting Robert J. Francis, Insurance Coverage for Faulty Workmanship Claims Under Commercial General Liability Policies, 30 Tort & Ins. L.J. 785, 796 (Spring 1995)). "In other words," the court stated, "exclusion j(5) applies to damages involving 'works in progress' and does not apply to completed operations." Id. (quoting Patrick J. O'Connor, Jr., Insurance Law & Construction, 19-APR Construction Law. 5, 8 (April 1999)). The court then noted that "[t]he uncontroverted facts demonstrate[d] that Mr. Powers' work was not 'in progress' at the time the . . . claim[s] [against him] arose," id., and that, instead, the claims against him were filed "more than one year" after he completed his performance. Id. at 1251. "Thus," the court concluded, "because the damage did not occur while Mr. Powers was working on the project, exclusion j(5) has no application here." Id.

-13-

The problem with the American States decision is that it fails to properly distinguish between "damage" and "claims." Indeed, the decision itself is conflicting, at times referring to "claims" arising during the performance of the insured's work, at other times referring to "damage" occurring during the performance of the insured's work, and ultimately focusing on when the claims against Powers were filed (rather than when the damage occurred or the claims accrued).

We conclude the better reasoned view is that exclusion j(5) applies whenever property damage "arise[s] out of the work of the insured, its contractors, or its subcontractors while 'performing operations.'" F. Malcolm Cunningham, Jr. & Amy L. Fischer, Insurance Coverage in Construction – The Unanswered Question, 33 Tort & Ins. L.J. 1063, 1093 (Summer 1998). "Hence, the exclusion applies only to damage from ongoing work, and not damage after completion." Id.; see Robert J. Franco, Insurance Coverage For Faulty Workmanship Claims Under Commercial General Liability Policies, 30 Tort & Ins. L.J. 785, 796 (Spring 1995) ("Exclusion j(5) . . . bar[s] coverage for damage to the work being done by the insured at the time of the damage."); e.g., McMath Constr. Co. v. Dupuy, 897 So. 2d 677, 682 (La. App. 2004) (concluding that identical exclusionary language was not applicable "because [the insured's] work was not being performed when the damage occurred, but was complete").

In conclusion, we agree with the district court that, given exclusion j(5), Maryland had no duty to indemnify Advantage for the losses alleged by plaintiffs because the

-14-

Johnson County District Court ultimately found that the physical damage to the windows occurred during the course of McGarrah's work on the homes.

*Exclusion j(6)*

The district court characterized exclusion j(6) "as a faulty workmanship provision," App. at 84, and interpreted it as "exclud[ing] coverage for that part of any property which had to be restored, repaired or replaced because Advantage's work was incorrectly performed on it." Id. at 83-84. Further, the district court concluded that the "products-completed operations hazard" exception to exclusion j(6), though "inartfully drafted," "does not reach work which is in progress at the time of the property damage." Id. at 84. Because "[t]he order of the Johnson County District Court [in the underlying lawsuit] makes clear that . . . the damage [at issue] occurred before Advantage completed its work," the district court concluded, "exclusion j(6) precluded coverage . . . ." Id.

Advantage contends on appeal that exclusion j(6) "does not exclude coverage under the policy" because Advantage "was no longer working on the property that suffered the damages claimed by the third-parties in the Underlying Action . . . ." Aplt. Br. at 35. In other words, Advantage argues that "the exclusion does not apply to claims arising from defective work that is discovered after the contractor has completed its work." Id. Thus, Advantage argues, "the application of the exclusion turns on the question of whether [its] work on the home was complete at the time the damage was discovered, in which case the exclusion would not apply." Id. at 36.

-15-

We again reject Advantage's interpretation.  Although exclusion j(6) is, as noted by the district court, "inartfully drafted," we nevertheless conclude that it was intended to exclude coverage for the cost of restoring, repairing or replacing faulty workmanship on the part of the insured, its contractors, and subcontractors.  More specifically, we conclude it was intended to exclude "property damage" that directly or consequentially occurs from the faulty workmanship of the insured and its contractors/subcontractors (i.e., work that "was incorrectly performed") while the work is ongoing.  See Franco, supra, at 796 ("Exclusion j(6) . . . is intended to bar defective workmanship claims.").  The express exception to exclusion j(6), though, allows an insured to recover consequential damages that arise out of his or her faulty workmanship after the completion of the work.  For example,

> assume that a contractor is building a home.  The contractor first erects the walls and completes the roof and then begins finishing the interior.  Unfortunately, the roofing was poorly installed and later leaks, thereby damaging partially completed parquet floors.  The damage to the floors [which was a consequence of the faulty workmanship that occurred after the work was complete] would be covered,  but replacement of the poorly constructed roof [which was a direct result of faulty workmanship that occurred while the work was ongoing] would be excluded.

Id. at 797.

The district court was therefore correct in concluding that exclusion j(6) precluded liability on the part of Maryland for the damages alleged in the underlying lawsuit.  That is, because the Johnson County District Court essentially found that McGarrah performed its work on the windows improperly, exclusion j(6) operated to preclude coverage for the

-16-

cost of repairing or replacing McGarrah's faulty workmanship. Farmington Cas. Co. v. Duggan, 417 F.3d 1141, 1143 (10th Cir. 2005) (concluding that, under Colorado law, identical exclusionary language in commercial general liability policy excluded coverage for "property damage resulting from shoddy work . . . ."); see id. at 1142 ("Damage to an insured's own work resulting from his faulty workmanship on it is usually covered by a performance bond, not a commercial general liability policy.").

*Did Maryland have a duty to defend?*

Although Maryland had no duty to indemnify Advantage for the losses alleged in the underlying lawsuit, the question remains whether Maryland had a duty to defend Advantage against the claims asserted against it in the underlying lawsuit. Under Kansas law, "[t]he insurer determines if there is a potential of liability under the policy by examining the allegations in the complaint or petition and considering any facts brought to its attention or which it could reasonably discover." Allied Mut. Ins. Co. v. Moeder, 48 P.3d 1, 4 (Kan. App. 2002).

In deciding this question, the district court noted that "[t]he record on this issue includes only the insurance policy and the petition in the underlying lawsuit, which alleged that 'a number of windows that were installed in new homes built by plaintiff were scratched because of the negligence of a particular subcontractor.'" App. at 85. Based upon this "scant" record, the district court concluded "that a factual investigation would have caused Maryland . . . to conclude what the Johnson County court concluded:

that the windows were damaged by a subcontractor who was performing work on the homes at the time of the damage." Id.

The district court's characterization of the information available to Maryland in making its determination is substantially, but not entirely, accurate. It is true that the record contains only a copy of the complaint filed against Advantage in the underlying lawsuit, and Advantage makes no assertion that Maryland could or reasonably should have been aware of any additional information (indeed, Advantage argues in its appeal that the policy required Maryland to decide whether it had a duty to defend based solely on the allegations in the underlying lawsuit). Where the district court is slightly inaccurate, however, is in suggesting that the complaint in the underlying action mentioned "scratched" windows.[1] Instead, the complaint more generally alleged that the windows in each of the couples' houses were damaged. Although that general allegation does not indicate, or even suggest, how the damage occurred, a review of the specific claims asserted against Advantage is more telling. The complaint filed against Advantage alleged claims for negligence, breach of contract/warranty, and for violation of the Kansas Consumer Protection Act. Turning first to the negligence claim, it alleged that Advantage breached a duty it "owed . . . to plaintiffs to install all window units in the

---

[1] In making this determination, the district court relied on the parties' stipulations in the pretrial order, which stated, in pertinent part: "The homeowners in the [underlying] case alleged that a number of windows that were installed in new homes built by plaintiff were scratched because of the negligence of a particular subcontractor." App. at 275. The pretrial order would not have been available to Maryland when it concluded it had no duty to defend as the pretrial order was filed after that decision was reached.

home[s] in a professional, workmanlike manner and without any material defects or damage to any of the windows." App. at 225. Turning next to the breach of contract/warranty claim, it alleged that Advantage "breached its contracts with plaintiffs by failing to construct their homes in a professional and workmanlike manner and without any material defects." Id. at 226. Finally, the Consumer Protection Act claim alleged, in pertinent part, that Advantage "fail[ed] to disclose the material defects in plaintiffs' homes to plaintiffs . . . ." Id. at 227. Together, these claims alleged that Advantage failed to properly construct the window portions of the plaintiffs' homes, i.e., that Advantage engaged in faulty workmanship.

Considering these allegations in light of the policy language, we conclude that exclusion j(6), which excludes coverage for the costs of restoring, repairing or replacing work that was improperly performed by the insured, absolved Maryland from any duty to defend Advantage in the underlying lawsuit.

> *Did the district court err in failing to adhere to the requirements of the Policy, which purportedly limit Maryland's ability to consider extrinsic evidence in determining whether it has a duty to defend?*

Advantage contends that the district court ignored the fact that the Policy language limits Maryland's "ability to consider facts or evidence extraneous to the claims of a petition filed against its insured" in determining whether it has a duty to defend the insured. Aplt. Br. at 39. We reject this contention for several reasons. First, Advantage never asserted this argument below. Indeed, Advantage itself pointed to evidence outside of the underlying complaint in asserting that Maryland had a duty to defend. Second,

-19-

there is no language in the Policy that limits Maryland's ability to consider extrinsic evidence. Third, Kansas law expressly authorizes an insurer to consider extrinsic evidence in determining whether it has a duty to defend. See Allied Mut., 48 P.3d at 4 (noting that an insurer may "consider[] any facts brought to its attention or which it could reasonably discover"). Finally, even if Maryland was limited to the language of the underlying complaint, it is clear, for the reasons already outlined, that it had no duty to defend Advantage.

*Did the district court err in refusing to award Advantage attorneys fees?*

In its final argument on appeal, Advantage contends it was entitled to an award of attorney fees pursuant to Kan. Stat. Ann. §§ 40-256 and 40-908, and the district court erred in concluding otherwise. "While this court generally reviews a district court's award of attorney fees for abuse of discretion, we review the underlying legal analysis de novo." Scott's Liquid Gold, Inc. v. Lexington Ins. Co., 293 F.3d 1180, 1183 (10th Cir. 2002).

The first statute cited by Advantage, § 40-256, provides:

> That in all actions hereafter commenced, in which judgment is rendered against any insurance company . . . on any policy or certificate of any type or kind of insurance, if it appear from the evidence that such company . . . has refused without just cause or excuse to pay the full amount of such loss, the court in rendering such judgment shall allow the plaintiff a reasonable sum as an attorney's fee for services in such action, including proceeding upon appeal, to be recovered and collected as a part of the costs . . . .

Kan. Stat. Ann. § 40-256.

The second statute cited by Advantage, § 40-908, provides:

-20-

> That in all actions now pending, or hereafter commenced in which judgment is rendered against any insurance company on any policy given to insure any property in this state against loss by fire, tornado, lightning or hail, the court in rendering such judgment shall allow the plaintiff a reasonable sum as an attorney's fee for services in such action including proceeding upon appeal to be recovered and collected as a part of the costs .
> . . .

Kan. Stat. Ann. § 40-908.

As the language of each statute makes clear, an insured's entitlement to fees hinges in pertinent part on judgment being rendered against the insurer. Here, however, judgment was not rendered against Maryland by the district court. Rather, the district court entered judgment against Advantage and in favor of Maryland. Thus, the district court did not err in concluding that Advantage was not entitled to a fee award.

AFFIRMED.