**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**January 25, 2019**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

MTI, INC., formerly Midwest Towers,
Inc.,

      Plaintiff - Appellant

v.

EMPLOYERS INSURANCE COMPANY
OF WAUSAU,

      Defendant - Appellee.

No. 17-6206

_____

**Appeal from the United States District Court**
**for the Western District of Oklahoma**
**(D.C. No. 5:15-CV-00716-R)**

_____

F. Thomas Cordell, Frailey, Chaffin, Cordell, Perryman & Sterkel, LLP, Chickasha,
Oklahoma, (Mort G. Welch, Welch & Smith, P.C., Oklahoma City, Oklahoma, with him
on the briefs), for Plaintiff-Appellant.

Jeffrey Gerish, Plunkett Cooney, P.C., Bloomfield Hills, Michigan, (Joseph R. Farris and
Emily D. Pearson, Franden, Farris, Quillin, Goodnight & Roberts, Tulsa, Oklahoma, with
him on the briefs), for Defendant-Appellee.

_____

Before **LUCERO**, **McKAY**, and **MATHESON**, Circuit Judges.
_____

**LUCERO**, Circuit Judge.
_____

In this appeal, we consider two exclusions from a commercial general liability policy that bar coverage for damage to "that particular part" of the property on which an insured is performing operations, or which must be repaired or replaced due to the insured's incorrect work. Under Oklahoma law, our analysis proceeds in two steps. First, we must determine as a matter of law whether the exclusions are ambiguous. Kerr-McGee Corp. v. Admiral Ins. Co., 905 P.2d 760, 762 (Okla. 1995). We conclude the phrase "that particular part" is susceptible to more than one reasonable construction: it could refer to the distinct component upon which an insured works or to all parts ultimately impacted by that work.

Because the language at issue is ambiguous we proceed to the second step, in which "the contract will be interpreted consistent with the mutual intent of the parties, with the ambiguity resolved most favorably to the insured and against the insurance carrier." Id. We thus adopt the narrower interpretation of the phrase "that particular part," under which the exclusion extends only to the distinct components upon which work was performed. Exercising jurisdiction under 28 U.S.C. § 1291, we reverse.

**I**

Western Farmers Electrical Cooperative ("WFEC") owns cooling towers in Oklahoma, which were serviced by MTI, Inc. ("MTI"), the appellant in this case. Employers Insurance Company of Wausau ("Wausau"), the appellee, provided a commercial general liability policy (the "Policy") to MTI at all times material to this appeal.

2

A 2011 inspection by MTI revealed that the anchor bolts in Cooling Tower 1 were corroded. MTI and WFEC agreed to a new repair contract, which included the following work:

> Unit 1 Tower Anchors
> Throughout the entire basin, install new 304 SS anchor castings. Included will be 304SS anchor bolts and Hilti anchor adhesive.
>
> Unit 1 Louvers
> On four (4) cells, remove existing louvers and install a (3) row louver system. New louvers will consist of 12oz. 4.2" corrugated FRP panels supported on 2"x4" Douglas Fir supports. Included will be new polypropylene support arms. Also included will be all necessary 304 stainless steel hardware.

Repairs on a separate cooling tower were also listed in the Tower 1 contract. The cooling towers at issue are mostly wood structures, approximately 50 feet wide, 150 feet long, and 70 feet tall. They are set in sump pits approximately 12 feet deep. The towers are stabilized with lateral wooden bracing beams, which are connected to the concrete foundation of the sump pit with anchor bolts.

On May 23, 2011, MTI employees removed all 64 corroded anchor bolts in Tower 1. Because the adhesive applicator had not yet arrived, MTI did not immediately install new anchor bolts. Further, MTI did not provide any temporary support to ensure the stability of the tower. On the night of May 24, extremely high winds struck the tower, causing it to lean and several structural components to break. Due to the extent of the structural damage, removal and replacement of the tower was determined to be the only viable option. Although at least some internal operational

3

equipment was not damaged, this equipment was deemed too dangerous to access and recover.

WFEC demanded MTI pay the cost of removing and replacing the entire tower, which totaled over $1.4 million. MTI filed a claim for coverage with its insurer, Wausau, under the Policy. After Wausau declined to provide coverage, MTI directly negotiated a settlement of $350,000 with WFEC. The balance of the tower replacement cost was borne by WFEC's insurer. MTI then sought recoupment of its settlement amount from Wausau.

The parties agree that the Policy was active at the time of the incident. Wausau denied coverage under two exclusions. Those provisions bar coverage for:

**j. Damage To Property**

"Property damage" to:
. . . .

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

MTI eventually filed suit against Wausau in Oklahoma state court for breach of contract. Wausau removed the case to federal court. On Wausau's motion for summary judgment, the district court held that the events described fell within the scope of both exclusion j(5) and j(6), and entered judgment in favor of Wausau. MTI timely appealed.

4

## II

We review a district court's grant of summary judgment de novo. <u>Greystone Constr., Inc. v. Nat'l Fire & Marine Ins. Co.</u>, 661 F.3d 1272, 1277 (10th Cir. 2011), <u>as amended on reh'g in part</u> (Dec. 23, 2011). Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. <u>Id.</u> We also review a district court's interpretation of state contract law de novo. <u>City of Wichita v. Sw. Bell Tel. Co.</u>, 24 F.3d 1282, 1286 (10th Cir. 1994).

Because this is a diversity action, we "apply the substantive law of the forum state." <u>Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. PepsiCo, Inc.</u>, 431 F.3d 1241, 1255 (10th Cir. 2005). The parties agree that MTI's claim is governed by Oklahoma contract law, and that there are no binding decisions on this precise issue from the state courts. We accordingly seek to predict how the Oklahoma Supreme Court would rule. <u>See</u> <u>Carl v. City of Overland Park</u>, 65 F.3d 866, 872 (10th Cir. 1995).

## A

Under Oklahoma law, "[w]hen addressing a dispute concerning the language of an insurance policy our first step is to determine as a matter of law whether the policy language at issue is ambiguous." <u>Cranfill v. Aetna Life Ins. Co.</u>, 49 P.3d 703, 706 (Okla. 2002). A provision is ambiguous if it is facially susceptible to two interpretations, considered from the standpoint of a reasonably prudent layperson. <u>Id.</u> If the language is not ambiguous, "we accept the language in its plain, ordinary and popular sense." <u>Id.</u>

5

Our initial inquiry is thus whether exclusions j(5) and j(6) are ambiguous. Exclusion j(5) excludes coverage for property damage to "[t]hat particular part . . . on which you . . . are performing operations, if the 'property damage' arises out of those operations." Similarly, exclusion j(6) excludes property damage to "[t]hat particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it." The key phrase for this appeal is "that particular part."

Although the Oklahoma Supreme Court has not explicitly addressed this language, these specific exclusions have received inconsistent treatment from a number of other state and federal courts. See, e.g., Roaring Lion, LLC v. Nautilus Ins. Co., No. CV 11-2-M-DWM-JCL, 2011 WL 3956132, at *5-7 (D. Mont. July 15, 2011) (unpublished) (noting the varied interpretations of these exclusions). The fact that jurisdictions have differed in their evaluation of terms does not, however, establish that the language in question is necessarily ambiguous. BP Am., Inc. v. State Auto Prop. & Cas. Ins. Co., 148 P.3d 832, 836 (Okla. 2005), as corrected (Oct. 30, 2006).

As several courts have explained, "that particular part" is narrowing language. See Fortney & Weygandt, Inc. v. Am. Mfrs. Mut. Ins. Co., 595 F.3d 308, 311 (6th Cir. 2010) (describing the words "that particular part" as "trebly restrictive, straining to the point of awkwardness to make clear that the exclusion applies only to building parts on which defective work was performed, and not to the building generally"); Mid-Continent Cas. Co. v. JHP Dev., Inc., 557 F.3d 207, 215 (5th Cir. 2009) (noting

6

"[t]he narrowing 'that particular part' language"); Columbia Mut. Ins. Co. v. Schauf, 967 S.W.2d 74, 80 (Mo. 1998) ("By using the words particular part, the provision evidences the intent to narrow the scope of the exclusion as much as possible." (emphasis omitted)); ACUITY v. Burd & Smith Constr., Inc., 721 N.W.2d 33, 41 (N.D. 2006) (pointing to "the limiting language 'particular part of real property'"); Glob. Modular, Inc. v. Kadena Pac., Inc., 222 Cal. Rptr. 3d 819, 829 (Cal. Ct. App. 2017) (holding that "the phrase is intended to be a narrowing element, one that limits the provision's application to a distinct part of a construction project"). These courts have thus determined the scope of coverage by looking to the "distinct component parts" on which an insured conducts operations. Mid-Continent, 557 F.3d at 217.

Several of these cases are instructive. In Mid-Continent, the Fifth Circuit held that exclusion j(6) did not bar coverage for damage to interior work caused by the failure to properly water seal exterior finishes and retaining walls because "[t]he exterior finishes and retaining walls were distinct component parts that were each the subject of separate construction processes and are severable from the" interior components. Id. Similarly, in Fortney & Weygandt, the Sixth Circuit concluded that exclusion j(6) did not bar coverage for a restaurant that had to be completely rebuilt due to faulty foundation work by the insured. 595 F.3d at 309-11. In ACUITY, the North Dakota Supreme Court held that a contractor hired to do work on a roof could recover for damage to the interior of an apartment building caused by defective work on the roof. 721 N.W.2d at 42. And in Shauf, the Missouri Supreme Court concluded that only kitchen cabinets were excluded when a machine being used on

7

those cabinets caused a fire that resulted in damage throughout a home. 967 S.W.2d at 76, 81.

Other courts have adopted a broader reading. For example, in William Crawford, Inc. v. Travelers Ins. Co., 838 F. Supp. 157 (S.D.N.Y. 1993), the court rejected the argument that "(j)(5) only excludes coverage for the damage to that specific part of the apartment on which [the insured] was actually doing work when the accident occurred," instead holding that damage to the entire apartment was excluded. Id. at 158. Similarly, in Jet Line Services, Inc. v. American Employers Ins. Co., 537 N.E.2d 107 (Mass. 1989), the court remarked that "whether at the time of the property damage an employee of the insured is or is not in one area or another of the property on which the insured has agreed to perform operations is not significant to the coverage question." Id. at 111.

Under Oklahoma law, it is the responsibility of the insurer desiring to limit liability to employ clear language in the contract. Haworth v. Jantzen, 172 P.3d 193, 197 (Okla. 2006). Wausau has failed to do so in this case. The phrase "that particular part" could be read to refer solely to the direct object on which the insured was operating. Alternatively, it could apply to those parts of the project directly impacted by the insured party's work. We agree with those courts that have held the former interpretation is a reasonable one, although we acknowledge that the latter is also reasonable. Because both readings are permissible, the exclusions are facially ambiguous. Cranfill, 49 P.3d at 706.

8

**B**

"If the language is ambiguous, we apply well-settled rules of construction to determine the meaning of the ambiguous language." Id. Specifically, it is our mandate to "construe the policy to give a reasonable effect to all of its provisions, and we liberally construe words of inclusion in favor of the insured and strictly construe words of exclusion against the insurer." Id. (citation omitted); see also Dodson v. St. Paul Ins. Co., 812 P.2d 372, 377 (Okla. 1991) ("In case of doubt, exclusions exempting certain specified risks are construed strictly against the insurer.").

Because the exclusions are ambiguous, they must be strictly and narrowly construed in a manner favorable to the insured party. Haworth, 172 P.3d at 197. "In construing an ambiguity or uncertainty against the insurer and in favor of the insured, Oklahoma looks to the objectively reasonable expectations of the insured to fashion a remedy." Id. Further, "an interpretation which makes a contract fair and reasonable is selected over that which yields a harsh or unreasonable result." Max True Plastering Co. v. U.S. Fid. & Guar. Co., 912 P.2d 861, 865 (Okla. 1996). In this case, interpreting "that particular part" to refer to the distinct components upon which work is performed best comports with these rules of interpretation.

Even under this definition, determining the "particular part" on which an insured works "will vary with the facts and circumstances of each particular case." Vinsant Elec. Contractors v. Aetna Cas. & Sur. Co., 530 S.W.2d 76, 77 (Tenn. 1975). In some instances, a larger unit will properly be considered the particular part. See,

9

e.g., Jet Line Servs., 537 N.E.2d at 111 (concluding exclusion j(5) barred coverage for entire fuel tank rather than only the bottom portion of the tank because insured "was retained to clean the entire tank, and it was the entire tank on which operations were being performed within the meaning of the policy language").  In some cases, an entire structure may qualify.  For example, several cases have held that the exclusions so apply when an insured was hired to raise the entire structure.  See, e.g., Lafayette Ins. Co. v. Peerboom, 813 F. Supp. 2d 823, 834 (S.D. Miss. 2011); Grinnell Mut. Reinsurance Co. v. Lynne, 686 N.W.2d 118, 125 (N.D. 2004).

As applied to the facts of this case, we conclude the "particular part" on which MTI was "performing operations" and upon which work "was incorrectly performed" should reasonably be understood as the anchor bolts.  Those bolts constitute "distinct component parts" of the tower, analogous to items like "interior drywall, stud framing, electrical wiring, and wood flooring."  Mid-Continent, 557 F.3d at 217.  MTI performed work incorrectly by removing them without promptly replacing them or bracing the structure.  We further conclude it is objectively reasonable that MTI would expect coverage for the cost of replacing the entire tower, including all of its operational elements, given the ambiguous language of exclusions j(5) and j(6).

## C

Contrary to Wausau's assertion, interpreting the Policy in this manner does not convert it into a performance bond.  See generally Black & Veatch Corp. v. Aspen Ins. (Uk) Ltd, 882 F.3d 952, 969 (10th Cir. 2018) ("Both insurance policies and performance bonds are used to spread risk, but they differ in fundamental ways.  An

10

insurance policy spreads the contractor's risk. A performance bond guarantees completion of the contract upon the contractor's default."). In Dodson, the Oklahoma Supreme Court, interpreting a different policy provision, noted that it would be inappropriate to "effectively convert [a] policy into a performance bond or guarantee of contractual performance" by reading a policy to cover "the repair and replacement of the insured's own faulty workmanship." 812 P.2d at 378 (quotation omitted). But that concern is not at issue here. MTI is not requesting that Wausau cover the cost of replacing the anchor bolts, which would be the heart of any faulty workmanship claim. The Dodson decision recognized this distinction, stating that a policy would provide coverage if the insured's faulty workmanship "results in damage to property other than the insured's work or product." Id. (quotation omitted). The monetary values at issue underline this point. MTI agreed to complete certain work for $46,273. A performance bond for such a project would not likely result in liability of over $1.4 million.

Similarly, we are not persuaded by Wausau's argument that the Policy contains an implied "business risk exclusion" that would otherwise override the express language. Absent a violation of public policy, businesses are free to contract to their preferred degree of risk embodied by the precise terms by which they choose to articulate the insurance relationship. See generally Siloam Springs Hotel, LLC v. Century Sur. Co., 392 P.3d 262, 268 (Okla. 2017). Oklahoma courts do not, as a matter of course, read broad business risk exclusions into contracts, and this court will not do so when it would override the express language of the contract. See Mid-

11

Continent, 557 F.3d at 216 (dismissing similar argument because "whether there is coverage in a particular case depends on the language contained in the policy at issue").

Finally, we reject Wausau's contention that this court has previously decided the issue presented. Our court has considered these exclusions, albeit under Kansas law. See Advantage Homebuilding, LLC v. Maryland Cas. Co., 470 F.3d 1003 (10th Cir. 2006). In that case, we held that exclusions j(5) and j(6) apply when property damage occurs while the insured's work is ongoing regardless of when the damage is discovered. Id. at 1010-12. Wausau focuses on two sentences of that opinion. We stated that exclusion j(5) applies "whenever property damage arises out of the work of the insured, its contractors, or its subcontractors while performing operations." Id. at 1011 (quotation and italics omitted). We also stated that exclusion j(6) "was intended to exclude 'property damage' that directly or consequentially occurs from the faulty workmanship of the insured." Id. at 1012.

But Advantage did not address the meaning of the phrase "that particular part." It had no occasion to do so because the insured there contracted to build entire homes. Id. at 1009. Accordingly, any statement made in Advantage as to that question would constitute dicta. And as we have previously noted, dicta, "being peripheral, may not have received the full and careful consideration of the court that uttered it." OXY USA, Inc. v. Babbitt, 230 F.3d 1178, 1184 (10th Cir. 2000) (quotation omitted). Further, Wausau's argument based on Advantage plainly goes too far. If, for example, portions of Tower 1 broke free during the windstorm and

12

destroyed nearby homes, that damage would fit within the description offered in Advantage. 470 F.3d at 1011, 1012. But there is no argument to be made that nearby homes would qualify as "that particular part" of the property on which MTI was working.

**III**

For the forgoing reasons, we **REVERSE** the district court's grant of summary judgment in favor of Wausau and remand for further proceedings construing the ambiguous exclusions in favor of MTI.